No. 85-638

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

KEITH R. GEYMAN,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Keith R. Geyman, pro se, Deer Lodge, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Joe R. Roberts, Asst. Atty. General, Helena
Jay Erickson, Legal Intern, Helena, Montana
Robert L. Deschamps, III, County Attorney, Missoula,
Montana

Submitted on Briefs: Nov. 7, 1986

Decided: December 9, 1986

Filed: DEC 9 - 1986

*Ethel M. Harrison*
———————————————————————
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Keith Geyman appeals a Missoula County District Court jury verdict convicting him of deviate sexual conduct. The court sentenced Geyman to forty years with ten years suspended and no possibility of parole.

The issues on appeal are whether there was sufficient evidence to support the conviction and whether expert testimony concerning the credibility of a child alleged to have been the victim of a sexual assault should be admitted into evidence.

We affirm.

On September 20, 1984, defendant Geyman accompanied his girlfriend and three of her sons, including nine-year-old Shane, on a trip from Missoula to Kalispell, Montana. At this point Geyman had been living in Missoula with his girlfriend for about a month. Before leaving Missoula, Geyman consumed several beers and some speed. The girlfriend and two of her sons remained in Kalispell while Geyman and Shane, the third son, returned to Missoula late that evening. Shane testified that on the trip home Geyman stopped the car three or four times and on each occasion asked him to perform oral sex. Shane refused the requests and testified that Geyman then performed oral sex on him. Geyman purchased more beer upon arrival in Missoula and then drove to the apartment with Shane. A short time later, Geyman entered Shane's bedroom and performed anal sex on the boy which continued the remainder of the night and early morning. Shane testified that Geyman slapped him numerous times during the assault and

2

told him not to tell anyone. Shane left the apartment at around 8:00 a.m. and walked to the apartment of his mother's friend who testified that Shane appeared tired, had circles under his bloodshot eyes, had very flushed cheeks, and acted very nervous. Shane went to school that day and stayed at the friend's apartment until his mother returned from Kalispell shortly after midnight.

On October 14, 1984, or just over three weeks after the incident, Shane told his mother about Geyman's attacks, whereupon the mother contacted law enforcement authorities. After an interview with the authorities, Shane was examined by a pediatrician, two clinical psychologists and a children's psychiatrist, all of whom testified at trial.

The test as to the sufficiency of the evidence was stated in State v. Wilson (Mont. 1981), 631 P.2d 1273, 1278-1279, 38 St.Rep. 1040, 1047, quoting Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed2d 560, 573:

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Emphasis in original.]

Shane testified that Geyman repeatedly performed anal sex on him and slapped him several times during the assault. Shane's testimony was corroborated by his mother's friend with whom he had stayed earlier. She observed that Shane was nervous, exhausted and complained of Geyman slapping him and not allowing him to sleep. She testified that Shane refused to travel back to Kalispell with Geyman to pick up his

3

mother. The mother testified that her son's room was in unusual disarray the day after the incident and that he is now afraid to sleep alone. Shane told a law enforcement officer that Geyman had told him not to tell anybody. In addition, the officer went to interview Geyman and before being informed of the nature of the interview, Geyman stated that he did not rape Shane.

Dr. Jenni, a clinical psychologist, testified that Shane related his testimony with anatomically correct dolls, was extremely embarrassed, tense, and had extreme difficulty describing the defendant's repeated attacks. Dr. Walters, also a clinical psychologist, testified that Shane was acutely anxious, frightened, and very uncomfortable as he explained the attack.

The evidence supporting the conviction is compelling and is sufficient to sustain the jury verdict. The testimony of the victim and his witnesses was substantially consistent and any rational trier of fact could find that the essential elements of deviate sexual conduct have been met.

The issue of whether expert testimony concerning the credibility of a child alleged to have been the victim of a sexual assault should be admitted into evidence is a case of first impression for this Court. We have dealt with the expert testimony issue as to adult sexual assault victims in two recent cases. In State v. Liddell (Mont. 1984), 685 P.2d 918, 41 St.Rep. 1293, involving sexual intercourse without consent, we held that expert testimony on rape trauma syndrome would be helpful to the jury in deciding the issue of consent. This Court said:

4

> We believe that skilled direct and cross-examination of an expert in this area can assist the jury in determining whether, in fact, the victim consented to the act.

Liddell, 685 P.2d at 923.

In State v. Brodniak (Mont. 1986), 718 P.2d 322, 329, 43 St.Rep. 755, 763, we held that expert testimony in support of the rape victim's testimony was improper comment on the victim's credibility and therefore an invasion of the province of the jury:

> Clearly [the expert's] testimony with regard to malingering and the statistical percentage of false accusations was improper comment on the credibility of [the complaining witness] in light of the above cited authority and should not have been admitted in this case.

The Court in Brodniak distinguished Liddell saying that rape trauma syndrome is a proper subject for expert testimony in a sexual intercourse without consent case. "Where all that is disputed is the consent element such evidence is relevant to the question of whether there was consent to engage in a sexual act which all parties agreed occurred." Brodniak, 718 P.2d at 326.

Since the admissibility of similar expert testimony in a case involving the sexual assault of a child is a novel issue for this Court, we feel it is proper to analyze the interpretations of other jurisdictions.

Two Minnesota cases are especially relevant to the case before us. In State v. Saldana (Minn. 1982), 324 N.W.2d 227, the situation involved expert testimony as to the typical post-rape behavior of most victims as compared to the behavior of the victim in this case. Based on her findings,

5

the expert stated that she believed the complainant was the victim of sexual assault and rape. The court said that permitting the expert to suggest that because the complainant exhibits some of the symptoms of rape trauma syndrome, the complainant was therefore raped, unfairly prejudices the accused by creating an aura of special reliability and trustworthiness. Saldana, 324 N.W.2d at 230. The court believed that rape trauma syndrome was not a fact-finding tool and that the jury was capable of considering the evidence and determining whether a rape had occurred. However, the court did say that under the right set of facts, such testimony should be admitted.

> Expert testimony concerning the credi-
> bility of a witness should be received
> only in "unusual cases." [Citations
> omitted.] An example of such an unusual
> case is a sexual assault case where the
> alleged victim is a child or mentally
> retarded. [Emphasis added.]

Saldana, 324 N.W.2d at 231.

Two years later, the Minnesota court once again considered a rape case involving expert testimony on rape trauma syndrome. State v. Myers (Minn. 1984), 359 N.W.2d 604. However, the victim in this case was a seven-year-old child, not an adult. The court held that it was within the trial court's discretion to admit testimony describing the psychological and emotional characteristics typically observed in sexually abused children and those observed in the complainant and giving other background data providing a relevant insight into the conduct of the child complainant which the jury could not otherwise bring to its evaluation of the child's credibility.

6

In approving the expert testimony, the court made the following remarks:

> With respect to most crimes the credibility of a witness is peculiarly within the competence of the jury, whose common experience affords sufficient basis for the assessment of credibility. In most cases, even though an expert's testimony may arguably provide the jury with potentially useful information, the possibility that the jury may be unduly influenced by an expert's opinion mitigates against admission. Nor should the credibility of witnesses in criminal trials turn on the outcome of a battle among experts. The nature, however, of the sexual abuse of children places lay jurors at a disadvantage. Incest is prohibited in all or almost all cultures, and the common experience of the jury may represent a less than adequate foundation for assessing the credibility of a young child who complains of sexual abuse. If the victim of a burglary failed to report the crime promptly, a jury would have good reason to doubt that person's credibility. A young child subjected to sexual abuse, however, may for some time be either unaware or uncertain of the criminality of the abuser's conduct. As [the expert] testified, uncertainty becomes confusion when an abuser who fulfills a caring-parenting role in the child's life tells the child that what seems wrong to the child is, in fact, all right. Because of the child's confusion, shame, guilt, and fear, disclosure of the abuse is often long delayed. When the child does complain of sexual abuse, the mother's reaction frequently is disbelief, and she fails to report the allegations to the authorities. By explaining the emotional antecedents of the victim's conduct and the peculiar impact of the crime on other members of the family, an expert can assist the jury in evaluating the credibility of the complainant. See State v. Middleton, 294 Or. 427, 657 P.2d 1215 (1983).

Myers, 359 N.W.2d at 609-610.

In distinguishing this case from _Saldana_, 324 N.W.2d 227, where the consent of an adult victim was at issue, the Minnesota court went on to say this:

> In the case of a sexually abused child consent is irrelevant and jurors are often faced with determining the veracity of a young child who tells of a course of conduct carried on over an ill-defined time frame and who appears an uncertain or ambivalent accuser and who may even recant. Background data providing a relevant insight into the puzzling aspects of the child's conduct and demeanor which the jury could not otherwise bring to its evaluation of her credibility is helpful and appropriate in cases of sexual abuse of children, and particularly of children as young as this complainant. State v. Middleton, supra; State v. Kim, 64 Hawaii 598, 645 P.2d 1330 (1982). See also State v. Loss, 295 Minn. 271, 280, 204 N.W.2d 404 (1973) (battered child syndrome); Ibn-Tamas v. United States, 407 A.2d 626 (D.C. Cir. 1979) (battered wife syndrome).

_Myers_, 359 N.W.2d at 610.

The issue has received recent treatment in the literature:

> The argument that such expert psychological testimony is prejudicial because it bears on the credibility of a witness, and thus invades the province of the jury, is simply wrong. Expert testimony cannot "invade the province of the jury" unless the jury is instructed that it _must_ agree with the expert's assessment. [Emphasis in original.]

Massaro, _Experts_, _Psychology_, _Credibility_ _and_ _Rape_: The Rape Trauma Syndrome Issue and Its Implications for Expert Psychological Testimony, 69 Minn. L. Rev. 395, 443 (1985).

The Oregon Supreme Court faced a similar situation in State v. Middleton (Or. 1983), 657 P.2d 1215. In that case a father was charged with raping his fourteen-year-old

daughter. At one point before trial, the daughter recanted her testimony. The State's expert testified that the stress on a child from an intra-family sexual assault can cause denial to occur. In holding that such testimony did not invade the province of the jury, the court stated:

> It would be useful to the jury to know that not just this victim but many child victims are ambivalent about the forcefulness with which they want to pursue the complaint, and it is not uncommon for them to deny the act ever happened. Explaining this superficially bizarre behavior by identifying its emotional antecedents could help the jury better assess the witness's credibility.

Middleton, 657 P.2d at 1220.

A Hawaii Supreme Court decision is in line with the Myers and Middleton cases. State v. Kim (Hawaii 1982), 645 P.2d 1330. The court held that the admission of expert testimony was proper:

> When . . . the nature of a witness' [sic] mental or physical condition is such that the common experience of the jury may represent a less than adequate foundation for assessing the credibility of a witness, the testimony of an expert is far more likely to be of value, and thus more likely to be admissible when its probative value is measured against its prejudicial effects.

Kim, 645 P.2d at 1337.

In the case before us, two expert witnesses testified as to the victim's emotional condition at the time they interviewed him. On cross-examination, Dr. Stratford gave the following testimony:

> Q. [Mr. Wilson, defense counsel] What I'm talking about is the length of time that you were with this little boy, the amount of time that you had to be with him, and based on that time you were

able to come up with a conclusion and render an opinion. That's all.

A. [Dr. Stratford] That's correct. Based on my time spent, it's my professional opinion that the boy had been traumatized and physically abused by someone. As I said twice before, though, that's ultimately a jury question.

Dr. Jenni's testimony as to her findings and conclusions is set out below:

Q. What is your general experience with children in this area?

A. General experience is that children don't make up such stories, and the research also backs that up. That it's like well under five percent of the cases that it's ever found out not to be true.

Q. Dr. Jenni, do you have an opinion as to whether Shane was sexually assaulted?

A. Yes.

Q. What is that opinion?

A. I believe that he was.

Q. What do you base that on?

A. I base that on the story that he told me and that it was very credible. It was consistent. It was very anxiety producing for him. I mean he -- he was not lying, and my general impression was that he was telling me the truth. That was a very painful story. That he would not have made up a story that was so painful to him.

We hold that expert testimony is admissible for the purpose of helping the jury to assess the credibility of a child sexual assault victim. The expert testimony in no way impinged upon the jury's obligation to decide the victim's credibility. It merely enlightened the jurors on a subject with which many or most jurors have no common experience they

can use to judge the victim's credibility. The victim in this case waited over three weeks before reporting the assault which, according to the expert testimony given in this case and others, is not uncommon for children subjected to sexual abuse. Young children are often unaware or uncertain of the criminality of the abuser's conduct and feelings of confusion, shame, guilt and fear often delay disclosure of the abuse for an indefinite period of time. Myers, 359 N.W.2d at 610.

The jury had the discretion to accept or reject the expert testimony in its entirety and in the end they were the sole judge of the child's credibility. The expert testimony was properly admitted.

Affirmed

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

11