No. 87-494

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

JERRY EILER,

        Defendant and Appellant.

---

APPEAL FROM:  The District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable B.W. Thomas, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Moses Law Firm; Charles F. Moses argued, Billings,
Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
Betsy Brandborg argued, Asst. Atty. General, Helena
David Rice argued, County Attorney, Havre, Montana

---

Submitted:  June 14, 1988

Decided:  September 14, 1988

Filed:  SEP 1 4 1988

*Ethel M. Harrison*

---

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Defendant Jerry Eiler appeals his jury conviction of sexual assault in violation of § 45-5-502, MCA, in the Twelfth Judicial District, Hill County, Montana. Defendant was charged by information on February 5, 1986, with sexually assaulting his then four-year-old stepdaughter, S.A. Eiler was sentenced to a term of fifteen years with the last seven years suspended. We affirm.

Defendant raises the following issues on appeal:

1. Did the District Court properly determine that the victim, eight-year-old S.A., was competent to testify to incidents which occurred four years earlier?

2. Did the District Court properly allow leading questions by the prosecuting attorney during the deposition of the eight-year-old victim?

3. Did the District Court properly admit evidence of defendant Eiler's prior acts with T.M., his stepdaughter in a previous marriage?

4. Did the District Court properly rule that Dr. Jarvis, a psychologist who examined S.A., was a qualified expert whose testimony was permissible?

5. Did the evidence support the jury conviction of guilty beyond a reasonable doubt?

The victim, S.A., was born on January 21, 1978. In September, 1980, she and her mother Sharon began living with Jerry Eiler, defendant and appellant in this action. Sharon and defendant were married in October, 1981. In the summer of 1982, Eiler had sexual contact with S.A. while she was riding with him on a tractor.

In January, 1983, Sharon went to the State of Washington for treatment of alcoholism, for a period of one month. During this time S.A. stayed with Eiler. While Sharon was

absent Eiler had sexual contact with S.A. in the family home on two separate occasions.

Shortly after Sharon returned home from Washington, she divorced Eiler.

By the fall of 1983, S.A. had become disobedient, destructive, and towards other children, abusive. S.A. also began masturbating frequently. This unusual behavior prompted Sharon to take S.A. to Dr. Jarvis, a psychologist, who concluded from his diagnosis that S.A. had been sexually abused. He testified to this at trial.

In February of 1986, Eiler was charged with sexual assault of his stepdaughter. S.A. testified by videotape deposition at trial. It was determined by the District Court at the deposition that S.A. was competent to testify.

S.A. testified that she understood what it meant to tell the truth and realized there were consequences if she failed to tell the truth. The videotaped deposition revealed that she was crying, quite upset, and was hesitant to answer questions concerning specific details of the alleged sexual contacts. The prosecution was allowed to use leading questions, and S.A. testified that the defendant had touched her "private parts" with his hands and had instructed her to touch his "private parts." S.A. testified that she did not tell anyone "because he [Eiler] said he would spank me."

T.M., Eiler's stepdaughter in a previous marriage, testified at trial that Eiler forced her to have intercourse with him regularly from 1973 when T.M. was age nine, until 1977. Eiler and T.M.'s mother, J.E., began living together in 1973, were married in 1975, and were divorced in 1977. Counsel for the defense objected to this testimony of prior acts by T.M., but the objection was overruled. Eiler was convicted by jury verdict of sexually assaulting S.A.

3

Appellant first contends that S.A., the victim, was not competent to testify. S.A. was four years old when forced to engage in sexual contact with Jerry Eiler and she was eight years old when she testified to the acts. Rule 601, M.R.Evid., is controlling:

> Rule 601. Competency in general; disqualification.
>
> (a) General rule competency. Every person is competent to be a witness except as otherwise provided in these rules.
>
> (b) Disqualification of witnesses. A person is disqualified to be a witness if the court finds that (1) the witness is incapable of expressing himself concerning the matter so as to be understood by the judge and jury either directly or through interpretation by one who can understand him or (2) the witness is incapable of understanding the duty of a witness to tell the truth.

The requirements for determining competence are "capacity of expression and appreciation of the duty to tell the truth." State v. Phelps (Mont. 1985), 696 P.2d. 447, 453, 42 St.Rep. 305, 312. The rule imposes no age requirement for testifying. State v. Campbell (1978), 176 Mont. 525, 579 P.2d 1231; State v. Smith (1984), 208 Mont. 66, 676 P.2d 185. This Court has allowed testimony of five-year-old victims in Phelps, 696 P.2d 447, 42 St.Rep. 305, and State v. A.D.M. (Mont. 1985), 701 P.2d 999, 42 St.Rep. 916; and testimony of four-year-old victims in State v. D.B.S. (Mont. 1985), 700 P.2d 630, 42 St.Rep. 770, Campbell, 176 Mont. 525, 579 P.2d 1231, and State v. Rogers (Mont. 1984), 692 P.2d 2, 41 St.Rep. 2131.

Appellant contends that S.A. did not have the ability to comprehend and relate what occurred. Appellant refers to

4

S.A.'s testimony which indicates she could not clearly remember details of the alleged acts. First, she could not remember where she lived in 1982 and 1983. Second, when the sexual contact occurred, she could not specifically recall whether she was standing or sitting on the tractor. And third, S.A. could not remember what clothes she and Eiler were wearing when the acts took place. However, it has been established by this Court that "children especially four-year-olds are not governed by the clock and calendar as adults are. They are generally at a loss to apply times or dates to significant events in their lives." State v. D.B.S., 700 P.2d at 634.

We have stated that what is important is the capacity to remember the occurrence and the ability of the witness to relate her impressions of what occurred. State v. Howie (Mont. 1987), 744 P.2d 156, 44 St.Rep. 1711. S.A.'s testimony is consistent with her prior reports of the incidents and is supported by Dr. Jarvis' testimony. This shows her capacity to remember the occurrence and her ability to relate her impressions. In State v. A.D.M. (Mont. 1985), 701 P.2d 999, 42 St.Rep. 916, a five-year-old was held to be competent because her testimony was uniform with her prior reports and was confirmed with the testimony of a psychologist.

Although appellant argues that the inconsistencies in S.A.'s testimony are indicative of her incompetency, we held in Phelps, 696 P.2d at 453, that "the inconsistencies of [the victim's] perception of where he was do not affect his competence." The record shows that S.A. could not answer inquiries of where she lived or what she was doing in 1982 and 1983. However, when asked where she lived or what she was doing when she was four years old, she had a more specific time frame in which she as a child could work and could answer the questions clearly.

In addition, we have ruled that inconsistencies go to the credibility of the evidence, the weight of which is decided by the jury. Rogers, 692 P.2d 2, 5; State v. Shambo (1958), 133 Mont. 305, 322 P.2d 657, 659.

Witness competency is within the discretion of the trial court. D.B.S., 700 P.2d at 636; Phelps, 696 P.2d at 453; Rogers, 692 P.2d at 5. The judge in this case did not abuse his discretion in deciding that S.A. understood her duty to tell the truth and had the ability to clearly communicate her accounts of the events in question.

Appellant, though, argues that S.A. did not understand the duty to tell the truth. Counsel for the defendant asked S.A. when she discovered the difference between the truth and a lie. Her response was that she did not know. This question is a difficult question for any adult to answer. It would be even more rare for a child to know when she learned the difference between the truth and a lie.

In order to show that S.A. did not know the difference between the truth and a lie, appellant quoted a portion of S.A.'s deposition.

Q. [By Mr. Rice] Is there a reason for telling the truth?

A. Yes.

Q. What's the reason for telling the truth? (No response) Do you believe in God?

A. Yes.

Q. Okay. And does God have anything to do with you telling the truth?

A. Yes.

Q. What does God have to do with that?

A. I don't know.

In citing this testimony counsel for the defendant contends that S.A. does not know what it means to tell the truth. However, counsel neglected to call attention to the statements made immediately prior to this testimony:

Q. [By Mr. Rice] Okay. Now do you know what it means to tell the truth?

A. Yes.

Q. What does it mean to tell the truth?

A. To tell what really happened.

Counsel also failed to cite the testimony which continued after the referred-to passage in appellant's brief:

Q. Okay. Does God care if you tell the truth?

A. Yes.

Q. And do you wish to please God?

A. Yes.

Q. Okay. What do you think happens if you don't tell the truth?

A. You won't be resurrected.

. . .

Q. Okay. Do you get in trouble for not telling the truth, not telling the truth at school.

A. Yes.

Q. What happens if you don't tell the truth at school?

A. You have to go to detention.

Q. What is detention?

A. You have to stay in in recess.

7

Q. And do you ever--would you get in trouble at home for not telling the truth?

A. Yes.

Q. What happens if you don't tell the truth?

A. You have to go to bed.

In addition, Dr. Jarvis testified that in his opinion S.A. knew the difference between the truth and a lie.

[By Dr. Jarvis] In my opinion she could clearly distinguish between the truth and a lie.

. . .

Her telling me at times that she talked to her mother, and finding out, indeed, she had talked with her mother about those kinds of things.

These passages indicate that S.A. understood what the truth was and that there were consequences if she told a lie. After hearing this testimony, the trial court judge was satisfied that S.A. had the ability to discern the difference between the truth and a lie.

Appellant's counsel also makes allegations that in addition to an ability to appreciate telling the truth, S.A. had been coached to say that the sexual abuse had occurred. However, Dr. Jarvis testified that he saw no signs of coaching. He stated that her story was consistent over time and when he asked who had told her to say what she had said, S.A. told Dr. Jarvis that no one had told her to say those things.

The District Court properly used its discretion in deciding that S.A. was competent to testify.

The second issue on appeal is whether the District Court properly permitted the prosecution to use leading questions with the eight-year-old victim.

Rule 611(c) of the Montana Rules of Evidence reads in pertinent part:

> Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony.

Appellant objected to the leading nature of the prosecution's questions to the victim, S.A. However, in Bailey v. Bailey (1979), 184 Mont. 418, 421, 603 P.2d 259, 261, we held that "whether or not [leading questions] will be allowed is a matter for the trial court's discretion." In Bailey the court allowed leading questions where the child was withdrawn.

In the case on appeal, Dr. Jarvis testified that S.A. and other children who are involved in sexual abuse cases, do not want to talk about the incident. S.A.'s videotaped deposition clearly corroborates Dr. Jarvis' expert opinion that child victims of sexual abuse are reticent witnesses. The trial court also noted in its memorandum on the competency issue, "it is noticeably difficult for her to testify about her experiences, a circumstance which is understandable and not unusual for a child witness in this type of case." We find that there was no abuse of discretion by the District Court for allowing leading questions by the prosecution.

The third issue before this Court is whether the testimony by T.M. of prior acts was properly admitted by the trial judge.

T.M., a stepdaughter of Eiler's in a previous marriage, testified that she had been sexually abused by Eiler

9

frequently between 1973 and 1977. In her testimony she stated that in 1973, when she was nine, Eiler asked T.M. to come to his room. He told her to take off her pajamas and then felt her breasts and vagina and told her to touch his penis. It was her testimony that she did so in fear that Eiler would hurt her mother if she did not cooperate. T.M. stated that this incident and others occurred when her mother was working nights from 10:00 p.m. to 5:00 a.m. and Eiler had opportunity to be alone with her. In subsequent incidents while on hunting trips alone with T.M. or in a laundry room where Eiler worked, T.M. was forced to have intercourse with him. These acts continued from 1973 to 1977 when Eiler and J.E., T.M.'s mother, divorced.

Appellant objected to the preceding testimony on the ground that it was in violation of Rule 404(b), M.R.Evid., which states:

> (b) Other crimes, wrongs, acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Appellant contends that the effect of the prior acts evidence is prejudicial to the defendant because it was offered to show Eiler's depravity or criminal propensities. However, respondent made it clear that the evidence was being offered to show plan, motive, or opportunity as is permitted by the rule.

In State v. Just (1979), 184 Mont. 262, 602 P.2d 957, we set forth procedures which must be strictly followed when evidence of other crimes is to be offered as testimony.

10

(a) Evidence of other crimes may not be received unless there has been notice to the defendant that such evidence is to be introduced. . . . Additionally, the notice to the defendant shall include a statement as to the purposes for which such evidence is to be admitted.

(b) At the time of the introduction of such evidence, the trial court shall explain to the jury the purpose of such evidence and shall admonish it to weigh the evidence only for such purposes.

(c) In its final charge, the court should instruct the jury in unequivocal terms that such evidence was received only for the limited purposes earlier stated and that the defendant is not being tried and may not be convicted for any offense except that charged, warning them that to convict for other offenses may result in unjust double punishment.

Just, 602 P.2d at 963-964.

Prior to trial, the prosecution filed a notice of intent to rely on prior acts. The District Court admonished the jury before T.M. testified that the evidence they were about to hear was to be considered only to show plan, motive, or opportunity. Plus, Instruction No. 13 was submitted which reminded the jury that the evidence of prior acts was offered only to show proof of motive, plan, or knowledge. By adhering to the Just rule, the prosecution assured that the defendant would not be prejudiced by the evidence of prior acts.

Just also provided a four-point test to which the evidence of prior acts is applied, three parts of which were first identified in State v. Jensen (1969), 153 Mont. 233, 239, 455 P.2d 631, 634, with the addition of a fourth part from Rule 403, M.R.Evid.

1. Similarity of crimes or acts;

2. Nearness in time; and

3. Tendency to establish a common scheme, plan, or system; and

4. The probative value of evidence is not substantially outweighed by the prejudice to the defendant.

Just, 602 P.2d at 961.

We conclude that the District Court considered all four elements and properly admitted testimony of T.M. regarding defendant's other crimes.

1. Similarity of crimes or acts.

Appellant, in his brief, contends that the acts are not similar, without articulating why they are not. The crime charged here is sexual abuse of a stepdaughter. The prior acts testified to by T.M. were also sexual acts with Eiler when she was his stepdaughter. Both girls were minors when they were forced to engage in the sexual activities. Appellant points out that S.A. was subject to "touching" and T.M. testified that she had unwillingly engaged in intercourse and that these acts are not similar. However, the first acts to which T.M. was subject by Eiler were acts of "touching" also. In addition, we established in State v. Tecca (Mont. 1986), 714 P.2d 136, 43 St.Rep. 264, that the prior acts need not be identical to the offense committed but be merely of "sufficient similarity." Tecca was applied to State v. Long (Mont. 1986), 726 P.2d 1364, 43 St.Rep. 1948. The defendant in Long was convicted of sexual abuse for "rubbing" the clothed bottom of a five-year-old. This was deemed sufficiently similar to the prior acts of "rubbing" the genitals of two four-year-olds after their pants had been removed. The acts here of sexual contact with stepdaughters are sufficiently similar.

12

## 2. Nearness in time.

Appellant contends that the time between the offense charged and the prior acts, five years, is too remote in time. To support this allegation appellant cites State v. Hansen (1980), 187 Mont. 91, 608 P.2d 1083, where we allowed a period of two and one-half years between acts, and State v. Stroud (Mont. 1984), 683 P.2d 459, 41 St.Rep. 919, in which testimony of prior acts three and one-half years previously was admitted. On the other hand we have made reference to putting a cap on the time frame between acts in State v. Tecca (Mont. 1986), 714 P.2d 136, 43 St.Rep. 264, where the Court stated that a single act nine years before would be too remote.

The five-year span involved here is significant to show that defendant engaged in sexual activities with his step-daughters only when he had the opportunity. Eiler had sexual contact with T.M. between 1973 and 1977, when he was married to her mother, J.E. The sexual activities with S.A. occurred when he was married to Sharon, and S.A. was his stepdaughter, in 1982 and 1983. He did not have parental control over a minor girl between 1977 and 1982 and therefore did not have the opportunity. Lack of opportunity in this case causes the actual time period between the two incidents to be less significant. State v. T.W. (Mont. 1986), 715 P.2d 428, 43 St.Rep. 368.

In State v. T.W. the defendant was convicted of sexually assaulting his developmentally disabled sister. Evidence of similar sexual abuse was presented, but the defendant objected on the grounds that the evidence was too remote in time. We held that the evidence was not too remote because during the four-year interval in which the defendant did not sexually abuse his sister he was in the military. He

13

engaged in sexual contact with her prior to enlisting in the military and at the first opportunity after being discharged.

In this case, Eiler engaged in sexual abuse during the time that he had parental control over a stepdaughter. These dates were 1973 through 1977 and 1982 through 1983.

It was held in State v. Fitzpatrick (1980), 186 Mont. 187, 606 P.2d 1343, and State v. Doll (Mont. 1985), 692 P.2d 473, 42 St.Rep. 40, that remoteness affects credibility of the evidence and not its admissibility. The evidence here was properly admitted for the jury to weigh.

### 3. Tendency to establish a common scheme, plan, or system.

The evidence testified to by T.M. was brought forward by the prosecution to show motive, plan, or knowledge, as required by the procedures in Just. Rule 404(b), M.R.Evid., codifying the rule pertaining to admissibility of prior acts, recognizes some allowed exceptions and includes in its list, opportunity. In this case defendant engaged in sexual contact when the opportunity presented itself and the evidence shows motive to engage in sexual contact with minor girls.

Eiler coerced S.A. to participate in sexual touching on three occasions. The first was when they were alone on the tractor. The second and third times occurred when S.A.'s mother Sharon was in Washington for treatment of alcoholism and Eiler and S.A. were alone in his bedroom. These were the first opportunities Eiler had to engage in sexual contact with a stepdaughter since 1977 when he divorced J.E. Between 1973 and 1977, when T.M. was Eiler's stepdaughter, acts of sexual contact and intercourse occurred when the two were alone either when T.M.'s mother worked nights or when Eiler and T.M. went hunting.

14

Like the defendant in State v. T.W., who sexually assaulted his sister before and after his military tour, Eiler forced sexual contact with his stepdaughters when given the opportunity. Rule 404(b) provides that evidence of prior acts is admissible for a showing that the defendant acted when he had the opportunity. The evidence in the case on appeal shows that Eiler acted only when he had parental control over a stepdaughter. Only when he could threaten punishment was he able to force the girls into engaging in sexual relations. T.M. testified that she engaged in the touching and sexual intercourse because she was afraid that Eiler would hurt her mother if she did not obey his commands. S.A. testified that Eiler threatened a spanking if she did not cooperate.

There is also some showing of motive behind Eiler's actions. T.M.'s testimony showed that each time Eiler married he had control over a stepdaughter and sexually abused her when they were alone. The motive behind this is Eiler's sexual interests in young girls. Just requires only a "tendency" to establish a common scheme, plan, or system. Just, 602 P.2d at 961. This tendency is shown by Eiler's actions.

In Just we stated that the prior acts "testified to occurred between the defendant and the victim; all transpired when the two were alone; and all involved essentially identical behavior on the part of the defendant." Just, 602 P.2d at 961.

In the instant appeal, although the victims were different, the acts transpired when Eiler was alone with each girl, and the acts involved comparable behavior on the part of the defendant. The prior acts here are sufficiently similar to the acts with which Eiler was charged to show motive behind the actions of the defendant, as required by Rule 404(b), M.R.Evid.

15

In State v. Long (Mont. 1986), 726 P.2d 1364, 43 St.Rep. 1948, the District Court allowed testimony of prior crimes where the defendant touched several little girls in the vaginal area or on the upper thighs or "rubbed one girl's bottom."

> . . . the State introduced evidence of the prior act to show a common scheme plan or design in the defendant's conduct. Because of the subtle nature of child abuse, we find the evidence of prior acts is similar enough to the acts involved to justify its admission.

Long, 726 P.2d at 1367. A common plan is evident through a showing that Eiler had parental control over each stepdaughter and maintained continual control through threats of punishment. Therefore, we would also hold that the acts show a common scheme, plan or design, apparent from Eiler's acts of sexual contact with S.A. and T.M. We hold that the evidence of prior acts showed opportunity and motive.

4. The probative value of the evidence is not substantially outweighed by the prejudice to defendant.

This Court has established that anytime evidence of prior acts is submitted to show plan, scheme, or design there will obviously be some prejudicial effect. Just, 602 P.2d at 961. However, if the evidence shows that the acts were similar, that they were near in time, and that they do in fact show a tendency to establish a common plan, scheme, or design, these factors combine to give great probative weight to the evidence of prior acts. Under the discretion of the District Court the prejudice was weighed against the probative effect. The procedural safeguards of Just were followed assuring less likelihood of prejudice to the defendant. Although T.M.'s testimony is prejudicial to Eiler, "[g]iven

16

the elusive nature of sexual assault against very young children, [the witness's] testimony was probative of the State's theory that defendant's actions were not an isolated event." Long, 726 P.2d at 1367-68. We hold that the evidence of prior acts was properly admitted by the District Court.

The fourth issue is whether the District Court properly ruled that Dr. Jarvis, S.A.'s psychologist, was a qualified expert and that his testimony was permissible. After Dr. Jarvis testified, defense counsel moved the court to strike his testimony on the grounds that (1) he was not a qualified expert in child psychology, and (2) his opinion was not based on medical certainty.

Appellant contends that Dr. Jarvis is not a qualified expert in the field of child psychology simply because Dr. Jarvis holds no degree in child psychology. The trial court, though, determined that he was sufficiently qualified. The appropriate rule of evidence, Rule 702 M.R.Evid, states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Dr. Jarvis holds a Ph.D. in psychology and a masters degree in counseling and guidance. Seventy percent of his practice involves children who allegedly have been sexually abused. He testified that he has attended numerous programs which focused on child psychology and sexual abuse, and he is the clinical director of a sexual abuse program in Havre, Montana. Taking these credentials into consideration, the District Court determined that he was a qualified expert.

17

The determination that a witness is an expert witness is largely within the discretion of the trial court and such determination will not be disturbed on appeal absent a showing of abuse of discretion. State v. Berg (Mont. 1985), 697 P.2d 1365, 42 St.Rep. 518; State v. Geyman (Mont. 1986), 729 P.2d 475, 43 St.Rep. 2125; In the Matter of J.W.K. (Mont. 1986), 724 P.2d 164, 43 St.Rep. 1483. In addition, the degree of an expert's qualification goes to the weight of the testimony decided by the jury rather than its admissibility. Berg, 697 P.2d at 1367; Matter of J.W.K., 724 P.2d at 166.

The trial judge properly ruled that Dr. Jarvis is an expert qualified to testify in cases of sexual abuse of children.

Appellant contends that Dr. Jarvis' diagnosis was performed in preparation of trial. However, S.A. was brought to Dr. Jarvis by her mother before the mother had any knowledge of possible sexual abuse. Dr. Jarvis stated, "I did no preparation for any kind of legal preparation or going to Court, which is typically something I do when I am currently working with a child."

Appellant contends, in objecting to Dr. Jarvis' testimony, that his opinion was not based on medical certainty. He states that Dr. Jarvis could not say specifically what traumatic event caused S.A.'s behavior. Dr. Jarvis, though, stated that he believed S.A. had been sexually abused. The weight of this testimony is to be decided by the jury.

Appellant cites State v. Brodniak (Mont. 1986), 718 P.2d 322, 43 St.Rep. 755, in support of his contention that the testimony of Dr. Jarvis was admitted improperly for the purpose of testifying to the veracity of S.A.'s testimony. However, appellant failed to make this objection at trial. If counsel fails to raise an issue at trial, the issue cannot be raised for the first time on appeal. Long, 726 P.2d

18

1364; State v. Patton (1979), 183 Mont. 417, 600 P.2d 194. The appellant failed to make a timely objection at trial and so cannot raise the issue here.

Appellant also cites Brodniak in support of his objection to Dr. Jarvis' testimony on the grounds that Dr. Jarvis was not an appropriate medical physician to give testimony. Brodniak stands for the proposition that a psychologist expert witness is limited in his opinion testimony. In Brodniak, it was held by this Court that an expert witness may testify as to his opinion of whether the victim was suffering from rape trauma syndrome, but the expert is not allowed to opine whether he believed the witness is telling the truth or whether he believed the story that the victim was narrating. Brodniak, 718 P.2d at 329.

The fifth issue on appeal here is whether the evidence was sufficiently substantial to support the jury verdict beyond a reasonable doubt. In Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, the standard of review is whether:

> [a]fter viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Jackson v. Virginia, 443 U.S. at 319. State v. Rodriguez (Mont. 1981), 628 P.2d 280, 283, 38 St.Rep. 578F, 578I; State v. Geyman (Mont. 1986), 729 P.2d 475, 476, 43 St.Rep. 2125, 2126.

Appellant contends that the testimonies of S.A. and T.M. were not sufficient for the jury to find guilt beyond a reasonable doubt, claiming conjecture and speculation. However, it was ruled by the District Court that S.A. was a competent witness and clearly gave testimony of abuse by

19

Eiler. Her testimony was consistent with what she had told Dr. Jarvis when he diagnosed her. Moreover, T.M. corroborated S.A.'s testimony with accounts of prior acts which tended to show opportunity and motive behind Eiler's forced sexual contacts.

The sexual assault statute, § 45-5-502(1), MCA, provides that:

> A person who knowingly subjects another not his spouse to any sexual contact without consent commits the offense of sexual assault.

Section 45-2-101(60), MCA, defines sexual contact as:

> [A]ny touching of the sexual or other intimate parts of the person of another for the purpose of arousing or gratifying the sexual desire of either party.

S.A. testified that Eiler touched her "private parts" and instructed her to touch his "private parts." This testimony clearly shows that any rational trier of fact could have found the essential elements of sexual assault against S.A. beyond a reasonable doubt.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

20

Mr. Justice R. C. McDonough, dissenting.

I dissent as to the third issue of whether the testimony of J.M. as to prior criminal acts was properly admitted by the trial court.

The general rule is that evidence of other crimes must be excluded. Rule 404(b), M.R.Evid. In State v. Tiedemann (1961), 139 Mont. 237, 362 P.2d 529, we said:

> The general rule should be strictly enforced in all cases where applicable, because of the prejudicial effect and injustice of such evidence, and should not be departed from except under conditions which clearly justify such a departure. The exceptions should be carefully limited, and their number and scope not increased.

Tiedemann, 362 P.2d at 531.

The reason for the rule is that prior bad acts are usually considered irrelevant and prejudicial. They tend to show defendant is a bad person or has criminal propensities, and on that basis juries may find that defendant committed the crime actually charged. In other words, they do not prove the crime charged, but only go to defendant's character or propensities. Also, as a matter of policy, they are inadmissible because there is a tendency for the trier of fact to give excessive weight to such acts, and to justify defendant's punishment irrespective of whether defendant is guilty of the present charge. As said in State v. Jensen (1969), 153 Mont. 233, 238, 455 P.2d 631, 633:

> "'[t]hat when a defendant is put on trial for one offense, he should be convicted, if at all, by evidence which shows that he is guilty of that offense alone; . . .'"

There are exceptions to the general rule prohibiting introduction of prior bad acts. Rule 404(b), M.R.Evid. They may be admitted, but only for the purpose of showing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The majority here holds that the evidence of the prior acts showed opportunity and motive. Motive is not really an issue in this case. It is self-evident that the motive for commission of these acts was sexual gratification. Opportunity is also not an issue because anyone in a parental capacity would have plenty of opportunity to commit this type of crime. Moreover, the State appears to have relied on the common plan exception for relevance on the bad acts issue, not opportunity.

Beyond the procedural requirements of notice, explanations, warnings and instructions, State v. Just (1979), 184 Mont. 262, 602 P.2d 957, set out a four-point test: similarity of crimes or acts; nearness in time; tendancy to establish a plan; and the probative value of evidence as weighed against its prejudice to defendant.

As to similarity, the act charged here was that of touching the genitalia by both the victim and the defendant and it is the same as some of the acts with J.M., but there is nothing distinguishing. The dominant prior acts with J.M. were the crimes of sexual intercourse without consent with a minor. There is no unique similarity between the prior acts and the case at bar other than the fact that both are sex crimes. Sexual intercourse without consent is a much more serious crime than sexual assault. See §§ 45-5-502 and 503, MCA. The former is a sex crime, but it is not the same as the latter, just as all larcenies are not the same. In order to tie the defendant into a plan or method of operation,

22

there must be something distinguishable and identifiable. Otherwise the other acts are not relevant and material.

As to nearness in time, over five years elapsed between the last act with T.M. and the first with S.A. There is no continuous series of acts tending to show intentional plan by defendant. In State v. T.W. (Mont. 1986), 715 P.2d 428, 43 St.Rep. 368, the interval was four years, and the prior acts were with the same victim. Because they were with the same victim, the acts in T.W. were more readily admissible. The separate crimes in this case were not a part of the history of the case, nor did they have any integrated tie-in. They were entirely separate, with some even allegedly committed in different states.

To establish a common plan, the "plan" must be a general or larger course of action. The State's position is that Eiler's plan was to commit sexual assault on a stepdaughter when he had an opportunity while the mother was out of the household, or when he and the victim were away from the household. This is inherently weak. It implies that one of the reasons he married S.A.'s mother was because she had a minor daughter. There is nothing more here than the general acts of a pedophile when he would have opportunity.

The probative value of T.M.'s testimony as to the crime charged is outweighed by its prejudice to the defendant. The evidence meeting each of the first three tests of the Just rule is weak. The testimony of S.A., the victim, is not the strongest because of her age and was bolstered by the testimony of the psychologist.

Other evidence of defendant's guilt is not so overwhelming as to bend the general rule on the inadmissibility of evidence of other crimes. The lack of strength in the evidence of the crime charged also

23

contributed to the prejudicial effect of the prior crimes. The defendant in this case should not be punished for the alleged crimes against T.M. on which the statute of limitations has run.

Another reason that caution should be employed in the admissibility of evidence of other crimes is that it opens up other issues which by inference or direct action or comment would greatly lessen a defendant's rights against self-incrimination as to the crime actually charged.

If such evidence is ruled admissible to show a plan, scheme, etc., then it goes to the merits of the main charge, and if defendant testifies, denying and contesting such evidence of other crimes, defendant is now into the merits of the main charge and defendant has forfeited his or her constitutional Fifth Amendment protection as to the main charge. See McGahee v. Massey, (11th Cir. 1982), 667 F.2d 1357, 1362.

The testimony of T.M. was prejudicial to the defendant under these circumstances. It was an abuse of discretion to admit such testimony and I would reverse defendant's conviction and remand for new trial.

_____
Justice

Justices John C. Sheehy and William E. Hunt join in the foregoing dissent.

_____
Justice

_____
Justice