No. 90-509

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

       Plaintiff and Respondent,

 -vs-

MALCOLM E. MAYES,

       Defendant and Appellant.



FILED

JAN 2 8 1992

Smith
SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Michael J. Lilly, Berg, Lilly, Andriolo, Tollefsen,
and Schraudner, Bozeman, Montana.

    For Respondent:

        Marc Racicot, Attorney General, Helena, Montana;
Deanne L. Sandholm, Assistant Attorney General,
Helena, Montana; Mike Salvagni, County Attorney,
Bozeman, Montana; Jennifer Bordy, Deputy County
Attorney, Bozeman, Montana.

Submitted on Briefs: August 15, 1991

Decided: January 28, 1992

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Malcolm E. Mayes appeals from a jury verdict finding him guilty of incest, a felony, in violation of § 45-5-507, MCA. The District Court of the Eighteenth Judicial District, Gallatin County, sentenced Mayes to a term of twenty (20) years with ten (10) years suspended. We reverse and remand for new trial.

The issues are:

1) Did the District Court err in admitting hearsay evidence of the children's statements to social worker Joyce Panzer and criminal analyst Lisa Berens?

2) Did the District Court err in admitting posed photographs of the alleged victims?

3) Did the District Court err in granting the State's motion in limine and prohibiting the defendant from cross-examining Leah Lippert about allegations made against her husband for child molestation?

4) Did the District Court err in allowing the jury to listen to the tape recordings of the entire testimony of witnesses Joyce Panzer and Lisa Berens?

5) Did the District Court err in denying Mayes' motion to suppress evidence of his admission of inappropriately touching his daughter approximately one year earlier while living in the State of Washington?

Defendant, Malcolm Mayes, was married. He had three children, including Crystal and Janie who are the complaining witnesses in

this case. In December 1989, Crystal was 5 years of age and Janie was 3. In June of 1989, Mayes' wife suffered a nervous breakdown and as a result she was hospitalized in a mental hospital in the State of Washington. Despite the fact that he quit his job to remain home with his children, Mayes testified he found it nearly impossible to provide his children with adequate care. He therefore decided in December to leave Washington and to return to his home state of New York, where he had family who could help raise his children.

While traveling to New York, Mayes stopped in Bozeman, Montana to spend the night at the Alpine Motel. Originally he only planned to stay in Bozeman one night. However, his car froze up during a period of extremely cold weather and he was required to stay an extra night while a mechanic worked on its engine.

While he was staying at the Alpine Motel, a maid named Leah Lippert came to Mayes' room to ask him to turn his water on so that the pipes would not freeze. According to her testimony, she did not believe that the room was occupied that night and consequently she opened the door without knocking. Ms. Lippert testified that when she entered the room, she saw Mayes laying naked on top of a little girl, also naked. She testified that he was forcing himself between her legs. She testified that there was a cloth over the child's mouth. She further testified that Mayes rolled on to his side and yelled at her to "get the hell out". At that time she noticed that Mayes had an erection.

Ms. Lippert testified that she immediately closed the door and left. After witnessing this scene, Ms. Lippert continued with her duties and went to the other rooms to tell the guests to turn their water on. When she completed her rounds she returned to the office and according to her testimony, told her boss, Carolyn Anderson, about what she had seen. She testified that her boss told her not to get involved and that Ms. Anderson threatened to fire her if she called the police. Ms. Lippert testified that she told a friend about what happened and the friend called the police.

Carolyn Anderson denied that Leah Lippert told her about the incident and was vehement in her denial that she threatened to fire her. Ms. Lippert was fired shortly after her boss was served with a subpoena. However, Carolyn Anderson testified that this was not the reason she fired Ms. Lippert.

The next day, after obtaining his car from the mechanic, Mayes and his children continued their journey. Meanwhile, back in Bozeman, the police received an anonymous phone call from a person who reported the incident of sexual abuse.

Leah Lippert testified that after Mayes left she was cleaning his room and found used condoms and "white sticky stuff on the pillowcases". She testified that Carolyn Anderson washed the pillowcases and that she threw the condoms away herself because she "didn't know whether they were important or not" for evidence in the case because she had "never turned anybody in like this" and had "never been in court before".

4

Mayes was stopped by police in Kadoka, South Dakota at 9:30 a.m. on December 13, 1989. He was taken to the sheriff's department where he was interviewed about the alleged incident. He completely denied that the event occurred. He was in custody for several hours. He voluntarily submitted to a lie detector test. After being told that he flunked the test, he confessed that he inappropriately touched his daughter while in the State of Washington, approximately one year earlier. He was subsequently placed under arrest and transported to Bozeman to stand trial.

Mayes' trial began on March 29, 1990. On March 31, 1990, the jury advised the District Court that it could not reach a unanimous verdict. As a result, the court declared a mistrial. Mayes' second trial began on June 25, 1990. At its conclusion, the jury returned a verdict of guilty. This appeal followed.

I

Did the District Court err in admitting hearsay evidence of the children's statements to social worker Joyce Panzer and criminal analyst Lisa Berens?

Mayes was separated from his children after he was stopped by South Dakota police. The children were taken by social worker Joyce Panzer and criminal analyst Lisa Berens. While in their custody, the children were bathed and were given physical examinations to check for signs of sexual abuse. These examinations revealed no physical evidence of sexual trauma. In addition, the children's clothing was taken as evidence.

5

Subsequent testing by the Montana State Crime Lab revealed no signs of semen.

In separate interviews, Panzer and Berens jointly interviewed both Crystal and Janie. Both interviews included the use of anatomically correct dolls and pictures in an effort to determine whether the children had been sexually abused. The interviews with the children were not audio taped nor were they video taped.

The testimony of Panzer and Berens established that during her interview, Crystal spontaneously placed male and female anatomically correct dolls in a position of sexual intercourse and stated that they were "doing sex." In response to questioning by Berens and Panzer, she indicated that her father touched her in the vaginal area by placing a mark on an anatomically correct drawing. She also described a penis as being hard rather than soft and having white stuff coming out of it that shoots up high. She said it tasted like "pancake surup". (sic). Both Panzer and Berens testified that Crystal was hesitant in talking about herself. However, in response to further questioning, Crystal indicated that her father had sex with Janie in a motel room where Janie had a towel over her face.

Janie was interviewed next. The testimony of Panzer and Berens established that during her interview Janie indicated, through the use of anatomically correct drawings that her father touched her in the vaginal area. She described the penis as a "wee-wee" and said her and her daddy did "exercises" together when

6

they were both naked. Janie also indicated that the penis was hard rather than soft and "stuff came out" of it. The testimony of Panzer and Berens did not establish when the above described incidents occurred.

Before trial the State filed a notice of its intention to introduce child hearsay evidence. Following a hearing the District Court determined that neither Crystal nor Janie were competent to testify. Subsequently, it entered an order allowing the State to introduce hearsay testimony of the children's statements to Joyce Panzer and Lisa Berens. However, it did not allow Laura Nelson, a social worker from the State of Washington, to testify because it found that her interview with the children occurred too long before the incident in Bozeman. As previously stated, both Panzer and Berens testified and repeated statements made by the two children during their interviews in South Dakota.

Rule 804(b)(5), M.R.Evid., provides an exception to the hearsay rule for statements not specifically covered by any of the exceptions enumerated in 804(b)(1) through 804(b)(4), but having "comparable circumstantial guarantees of trustworthiness". Rule 804(b)(5) has been characterized as a "catchall exception" to the hearsay rule. However, it is distinguished from Rule 803(24), M.R.Evid., where the availability of the declarant to testify is immaterial, in that Rule 804(b)(5) comes into play when the declarant is _unavailable_ to testify. Such is the present case.

We will analyze the admission of this hearsay evidence under

the child hearsay guidelines set forth in State v. J.C.E. (1989), 235 Mont. 264, 273, 767 P.2d 309, 315. In addition we will analyze the admission under the recent United States Supreme Court case of Idaho v. Wright (1990), 110 S.Ct. 3139. In Idaho v. Wright the victim in an incest case testified and the United States Supreme Court held that incriminating statements admissible under an exception to the hearsay rule were not admissible under the Confrontation Clause unless the prosecution demonstrates the unavailability of the declarant, and unless the statement bears adequate indicia of reliability--a showing of particularized guarantees of trustworthiness. The Court concluded that such "particularized guarantees of trustworthiness" must be shown from the totality of the circumstances that include only those circumstances that surround the making of the statement and that render the declarant particularly worthy of belief. The Court also held that the presence of corroborating evidence more appropriately indicates that any error in admitting the statement might be harmless, rather than concluding that the evidence affords a basis for presuming the declarant to be trustworthy. Idaho v. Wright, 110 S.Ct. at 3151.

We will also analyze the admission of the hearsay evidence under the recent case of State v. Harris (1991), 247 Mont. 405, 808 P.2d 453. We will discuss State v. Harris at various points as we review State v. J.C.E. as that case was also considered and discussed in State v. Harris.

In State v. Harris the majority opinion considered the conditions under which hearsay testimony by a therapist who was an expert in treating victims of child sexual abuse may be admitted. In its discussion of this point, the Court pointed out that a therapist does not see a child for treatment of sexual abuse unless there has been a claim of such abuse; that the therapist may be arguably predisposed to confirm what she has been told; and concluded that the nature of the relationship between the therapist and a child client has a negative impact on the trustworthiness of the hearsay statement. The Court further concluded that the circumstances in which a therapist hears a child's statement about sexual abuse are not such that hearsay statements will possess circumstantial guarantees of trustworthiness. The Court further pointed out that statements to a therapist are not made spontaneously and referred to the suggestiveness of questioning and prior statements. Finally, the Court stated:

> In analyzing these factors, we conclude that <u>only in an extraordinary case will hearsay testimony by a therapist concerning the identity of the perpetrator or the nature of the abuse possess sufficient circumstantial guarantees of trustworthiness to be admissible into evidence.</u> We hold that hearsay statements of a child victim of sexual abuse who does not testify at trial, will in general, not be admissible under Rule 804(b)(5), M.R.Evid., through the child's therapist. . . . (emphasis added).

Harris, 808 P.2d at 459. The present case is clearly distinguishable from State v. Harris. Here the children were interviewed by social worker Joyce Panzer and criminal analyst Lisa Berens. They were interviewed as a part of a criminal

9

investigation. Neither Panzer nor Berens had the relationship of therapist with either of the children.

In State v. Harris the psychotherapist had a long term relationship with the child for purposes of therapy. In the present case, the social worker and the criminal analyst met with the children the day after the occurrence. Their relationship with the children began and ended shortly after the arrest and was brief. In State v. Harris the psychotherapist knew and treated Janey and Robby over a substantial period of time during which the children opened up and identified the perpetrator. In the present case the children gave their testimony, including the identification of their father as the perpetrator, the very next day. In State v. Harris only the psychotherapist interviewed the children. In this case, two witnesses jointly interviewed the children and their testimony corroborated each other. In contrast to State v. Harris, in this case the children volunteered their statements spontaneously with regard to sexual knowledge without suggestiveness on the part of the interviewers. We initially conclude that the primary concern of State v. Harris with regard to testimony by a treating therapist is not present in this case and the rationale attributable to the treating therapist is not present with regard to either of the witnesses. While we will discuss State v. Harris further in connection with our review of State v. J.C.E., we initially conclude that the primary holding of State v. Harris does not require the exclusion of the hearsay testimony

10

under this issue.

Under State v. J.C.E. the trial court must make preliminary findings concerning the child's availability before hearsay testimony can be considered under Rule 804(b)(5): (1) the victim must be unavailable as a witness; (2) the proffered hearsay must be evidence of a material fact, and must be more probative than any other evidence available through reasonable means; and (3) the party intending to offer the hearsay testimony must give advance notice of that intention. In this case the District Court determined that the children were not available as witnesses and the State properly gave notice of intent to introduce the child hearsay statements through the testimony of the social worker and criminal analyst. This leaves preliminary finding (2) for consideration.

The question is whether the proffered hearsay was more probative than any other evidence available through reasonable means. The only other evidence available was the testimony of the maid who testified as to the observation of the defendant in bed with the child whose face was covered by a towel. Circumstantial evidence was submitted showing that the hotel room was rented to the defendant and that he had his three small children with him, and such evidence might afford a proper basis for a trier of fact to conclude that the defendant committed the crimes against these particular complaining witnesses.

The District Court made thorough and careful analysis of the

offered testimony and made the following findings of fact and

conclusions of law concerning the child hearsay guidelines.

> Both victims are unavailable and the evidence is material and more probative than other evidence in the case. The court has considered that there is eyewitness testimony by Leah Lippert who is a maid at the Alpine Lodge and that she is expected to testify that on December 11, 1989 at 10:00 p.m. she was checking the rooms at the Alpine Lodge and she entered Room #18 after knocking and receiving no answer. She believed the room was unoccupied. When she turned the light on she saw the defendant naked with an erection lying over the top of what she thought appeared to be a 5-year old child. The child was naked, lying on the bed with a towel or white material over her face. Ms. Lippert will testify that the little girls legs were apart and that he was down between them and that she was of the opinion that he was trying to force himself sexually on the child. The two other children were observed by Ms. Lippert to be crying softly on the other bed in the room and she was immediately ordered out of the room by the defendant.
> This is, of course, powerful evidence by a disinterested person but the court deems that the testimony of the children is probative as to the actual acts against the children and therefore finds that the evidence should be admitted under these threshold requirements.

The District Court also considered the following Child Guidelines.

> Crystal is age 4. Janie is age 3.
> Crystal has verbal skills and Janie's verbal skills are less developed although the witness, Laura Nelson, was of the opinion that she had proper verbal skills.
> Concerning comprehension, all three witnesses testified that Crystal had proper comprehension skills but Janie's were said to be in question unless the matter were put to her in very simple terms.
> It is believed by all three witnesses that Crystal knew the difference between truth and falsehood and she displayed that on the witness stand. Janie's understanding of truth and falsehood was less certain, although she was able to describe certain members of her family accurately.
> There does not appear to be any clear motivation for the children to lie in this case.
> The mental capacity of Crystal is said to be proper for her age and the mental capacity of Janie, of course,

12

is less developed but she was able to recognize and use anatomically correct dolls.

Crystal displayed a good memory for her age and maturity and Janie did not.

We also point out that since the child's face was covered with a towel, the maid could not specifically identify the child. At most a trier of fact could conclude from the evidence that the child could have been one of defendant's three small children who were with him when he rented the room. Furthermore, Crystal, the five year old, in her interview described her father having sex with her sister Janey in a motel room where Janey had a towel over her face. Crystal had previously described "doing sex" by placing anatomically correct dolls in a position of sexual intercourse. In turn Janey had described how she and defendant did "exercises" together when they were both naked. We conclude that the hearsay testimony of the statements by Crystal and Janey was more probative than the testimony on the part of the maid.

Under State v. J.C.E. the admissibility of evidence is within the discretion of the trial court. We conclude that the District Court did not abuse its discretion in reaching its decision, and affirm its conclusion that the proffered hearsay evidence was more probative than any other evidence available through reasonable means.

Having concluded that the preliminary protections of Rule 804(b)(5) as required by State v. J.C.E. have been met, we will consider the child hearsay guidelines enumerated in that case. These guidelines were considered in groups as follows: (1) the

13

attributes of the child hearsay declarant; (2) the witnesses relating the hearsay statement; (3) the statement itself; (4) the availability of corroboration evidence; and (5) other considerations. State v. J.C.E., 767 P.2d at 315, 316.

With regard to the attributes of the child hearsay declarants in this case under (1), the evidence before the District Court established the children's ages as 5 and 3, and also established that both children had the ability to communicate verbally and that each child possessed sufficient memory to retain an independent recollection of the events. There was no evidence to indicate a motivation other than telling the truth because of the absence of any relationship between the children and the social worker and the criminal analyst. We therefore conclude that the attributes of the child hearsay declarants do allow the admission of the evidence. In addition we conclude the foregoing constitute guarantees of trustworthiness under both Idaho v. Wright and State v. Harris.

Under (2), the witness relating the hearsay statements, the first aspect is the witnesses' relation to the child. Here there was no existing relationship between the social worker and the criminal analyst and the two children. This should be distinguished from State v. Harris where the psychotherapist had a long term relationship with the child for purposes of therapy and described how it had been some time before Janey opened up to her and described what had happened both by use of anatomically correct dolls and verbal description. In the present case the two people

14

interviewed the child shortly after the incident took place. In this case there is nothing in the relationship to suggest that such relationship might have had an impact on the trustworthiness of the hearsay statement or that the witnesses might have a motive to fabricate or distort. The timing of the statement in relation to the incident at issue is particularly significant here because the testimony took place on the following day. In addition, two witnesses here together interviewed each child. The relationship between the witnesses and the children was brief and the children's statements were heard very close in time to the occurrence. This suggests that the children would be much less likely to fabricate and that the testimony is more trustworthy in the present case. Again this is distinguishable from the facts in State v. Harris. In addition we have the testimony of each of the two girls which corroborated each other.

In State v. Ryan, (Wash. 1984), 691 P.2d 197, 205, the Washington Supreme Court held that whether more than one person heard the statements, the timing of the declaration and the relationship between the declarant and the witnesses were key factors in determining whether the hearsay statements were reliable. We adopt the theory of State v. Ryan and conclude that all of the circumstances under the State v. J.C.E. guidelines in group (2) tend to establish the proper admissibility of the evidence. We conclude that such circumstances exhibit guarantees of trustworthiness under the analysis required in Idaho v. Wright.

15

Under State v. J.C.E. group (3), the statement itself, the statements of both children demonstrated in this case sexual knowledge not normally attributable to a 3 year old and a 5 year old. This included the use of anatomically correct dolls, the marking of anatomical drawings, the testimony of both girls as to the hardness of the penis and the stuff which came out of it, including the statement that the stuff tasted like syrup. These statements expressed knowledge not normally attributable to children of these declarants' ages. The information was volunteered spontaneously. The record does not demonstrate the suggestiveness of any prior statement by the witness which would influence the same. In addition the statements were made to more than one person and were near in time to the incident at issue. Again the statements meet the standards of group (3) - the statement itself. In addition, the circumstances again exhibit guarantees of trustworthiness under the Idaho v. Wright test.

In State v. J.C.E. next is group (4) - the availability of corroborative evidence. Here the corroborative evidence on the part of the maid is both substantial and significant. While that testimony may have been subjected to a number of questions because of the contradictory evidence as to its believability, the record does still contain sufficiently substantial corroborative evidence to meet this group (4) requirement. We do note that under Idaho v. Wright:

> the presence of corroborating evidence more appropriately indicates that any error in admitting the statement might

16

be harmless, rather than that any basis exists for presuming the declarant to be trustworthy.

Idaho v. Wright, 110 S.Ct. at 3150-51.

Because of that statement, the presence of corroborating evidence is not significant under that case for admission purposes. On the other hand, at a minimum the testimony does establish a basis for considering both declarants to be trustworthy.

Under State v. J.C.E. group (5) - other considerations - we do not find any particular facts which need analysis.

Under State v. J.C.E., the admissibility of the evidence in question remained in the discretion of the trial court. This Court will defer to the trial court's discretion unless an abuse of discretion is clearly shown. Applying the analysis required by State v. J.C.E. to the testimony of witnesses Panzer and Berens, we conclude that the District Court did not commit an abuse of discretion in admitting the hearsay testimony.

Considering the requirements of Idaho v. Wright, we conclude that the evidence did include the required particularized guarantees of trustworthiness so that it is admissible under that case as well. We have previously concluded that we distinguished the testimony by the two witnesses here from the physical therapist involved in State v. Harris. In reviewing the testimony, we conclude that the testimony with regard to the identity of the defendant and the nature of the abuse, possessed sufficient circumstantial guarantees of trustworthiness to be admissible under the rule of that case. We therefore conclude that State v. Harris

17

does not require the exclusion of the evidence.

We hold that the District Court did not err in admitting the hearsay evidence of the children's statements through social worker Joyce Panzer and criminal analyst Lisa Berens. We therefore affirm on this issue.

## II

Did the District Court err in admitting posed photographs of the alleged victims?

The second issue submitted by Mayes concerns the District Court's decision to admit three pictures taken of Crystal and Janie after Mayes was arrested. These pictures were taken of the children at their foster home shortly before they returned to Washington. Mayes maintains that the photographs were not relevant to any issue at trial and were highly prejudicial.

Photographs are admissible if they are relevant to describe a person, place, or thing involved in the case. Fulton v. Chouteau County Farmers' Co. (1934), 98 Mont. 48, 37 P.2d 1025. However, otherwise relevant photographs are not admissible if their probative value is outweighed by prejudice to the defendant. Rule 403, M.R.Evid. It is up to the trial court to determine if the probative value of the photograph outweighs any prejudicial effect to the defendant. State v. Henry (1990), 241 Mont. 524, 788 P.2d 316. This Court will not disturb such a decision absent a showing of abuse of discretion. State v. Austad (1982), 197 Mont. 70, 641 P.2d 1373.

18

The State maintains that the photographs were relevant to show the jury who this case involved. It maintains that the pictures show no physical injuries and in fact seem to depict two happy, healthy children. Given the nature of these photographs Mayes cannot show any prejudice.

We have examined the three photographs and agree that they do not depict anything out of the ordinary which would normally serve to arouse a jury's passion. They simply show Crystal and Janie in normal poses smiling for the camera. Although their relevancy may be somewhat questionable, we do not agree that their admission was calculated to arouse the sympathies or prejudice of the jury. Moreover, when the trial court admitted the photographs the jury was given a cautionary instruction that the exhibits should not inflame or otherwise excite their sympathies.

We conclude there was no abuse of discretion in the admission of the photographs and hold that the District Court did not err in admitting such photographs. We affirm on this issue.

## III

Did the District Court err in granting the State's motion in limine and prohibiting the defendant from cross-examining Leah Lippert about allegations made against her husband for child molestation?

Shortly after Mayes' first trial, defense counsel was informed through an anonymous phone call that Sonny Lippert, the husband of the State's chief witness, was under investigation for child

19

molestation. Mayes' counsel, believing this information to be relevant to Leah Lippert's credibility, sought to obtain the investigation file that was compiled on these accusations. Ultimately the file was produced. However, the State filed a motion in limine requesting the court's order prohibiting the defense from cross-examining Leah Lippert concerning the allegations against her husband. After reviewing the records in camera and hearing oral argument on the matter, the District Court held that the defense could not use the records unless it could establish some factual link between the Mayes children and Mr. Lippert.

Mayes argues that the court's ruling was an abuse of discretion. He maintains that the information may have been relevant to Ms. Lippert's motive to falsify. According to Mayes, a reasonable and logical argument could be made that her testimony was meant to divert the public's attention away from her husband's conduct.

Once again, we reemphasize the fact that rulings on admissibility of evidence are left to the sound discretion of the trial court. Its ruling on such matters will not be overturned unless there is an abuse of discretion. State v. Crazy Boy (1988), 232 Mont. 398, 757 P.2d 341. When the District Court ruled on this matter, it took into account the fact that at the time Mayes' alleged criminal activity occurred, no investigation had been instituted against Mr. Lippert. Moreover at the time of trial, no

charges had been filed and Mayes was unable to establish any connection between Lippert's alleged activity and his own pending charges. Given these facts, the court determined that the evidence was irrelevant and immaterial.

We conclude there was no abuse of discretion in this ruling. The District Court personally viewed the investigative file and personally viewed Leah Lippert testify at the hearing on the State's motion in limine. After taking all of these circumstances into consideration, it decided to disallow this evidence unless the defense could establish some link between Mayes' children and Mr. Lippert. This decision was within the proper boundaries of its discretion and we will not disturb it on appeal. We affirm on this issue.

IV

Did the District Court err in allowing the jury to listen to the tape recordings of the entire testimony of witnesses Joyce Panzer and Lisa Berens?

After the jury retired to deliberate, it returned a note to Judge Olson requesting to hear again the testimony of Lisa Berens and Joyce Panzer. The State did not object. However, defendant did object as stated below.

> I believe the request is overly broad. It is not nearly specific enough and if the jury were to allow -- were to be allowed to hear all of their testimony again, it would be unduly emphasizing that testimony over all of the other testimony in the trial and would prejudice the rights of the defendant.

The court allowed the replaying of the testimony because "this

testimony is pointed and crucial and obviously of interest to the jury. And the court notes that coincidentally the last jury in this matter also asked for and received the testimony of these two persons".

On appeal, defendant maintains the replaying of the testimony was prejudicial and reversible error. The State argues that it was not prejudicial because the jury heard all of the testimony, including cross-examination.

Section 46-16-503(2), MCA, provides:

After the jury has retired for deliberation, if there is any disagreement among the jurors as to the testimony or if the jurors desire to be informed on any point of law arising in the cause, they shall notify the officer appointed to keep them together, who shall then notify the court. The information requested may be given, in the discretion of the court, after consultation with the parties.

The case of State v. Harris was decided after the conviction of the defendant in the present case. In State v. Harris, this Court held that the District Court committed reversible error when it allowed the jury to rehear the entire testimony of a child victim of sexual abuse. This Court held that the reading of the testimony prejudiced the defendant by placing undue emphasis on the statement of the alleged victim to the exclusion of the testimony of other witnesses.

While under § 46-16-503(2), MCA, the decision to allow a replaying or restatement of testimony is addressed to the discretion of the district court, the court should determine what particular testimony has caused the disagreement among the jurors.

22

After making that determination, the court shall exercise its discretion after consultation with the parties, keeping in mind that the court must avoid undue emphasis upon particular testimony as condemned in State v. Harris.

In the present trial the District Court allowed the jury to listen to the tape recordings of the entire testimony of both witnesses Panzer and Berens. The testimony of those witnesses was critical to the case of the State. In a manner similar to State v. Harris, we conclude that the playing of the entire testimony of both witnesses unduly emphasized the testimony of the alleged victims to the exclusion of the testimony of other witnesses.

We hold that the District Court abused its discretion in allowing the jury to listen to the tape recordings of the entire testimony of Panzer. and Berens. We reverse and remand for new trial on this issue.

V

Did the District Court err in denying Mayes' motion to suppress evidence of his admission of inappropriately touching his daughter approximately one year earlier while living in the State of Washington?

When Mayes was picked up by the South Dakota police he had been awake and driving for almost 26 hours. At the time he was taken into custody he was interviewed by Agent John Walker of the South Dakota Division of Criminal Investigation. After being read his Miranda rights, Mayes agreed to be interviewed without an

attorney present.   Portions of the interview follow.

Q. Have you ever had any problems with the law - ever been looked at for any type of child abuse or molestations?

A. No, ah, I've been accused of it once before from my mother-in-law and ah Child Protection Services checked them out here in Washington.

Q. Where, where at in Washington?

A. In Tacoma, Washington.

Q. In Tacoma?

A. Accusations and when Child Protection Services got done they suggested that I take the kids and go back to my family and that's why I'm going.

Q. And your family is where?

A. They're in New York.

Q. Do you have custody of the children - are they in your custody by any order or anything?

A. Not by any court but I'm the only one capable of taking care of them.

Q. Is, did you let anybody aware of the fact that you'd be leaving the State of Washington?

A. My CPS case worker.  She helped me get money and food and stuff for the trip.  And my, one of my sister-in-laws knew I was going.

Q. okay what, when you - can you kind - has any of the children been hurt?

A. No, not at all.

Q. um there's kind of a problem in in Montana at the motel that you were staying at.

A. Okay.

Q. There's blood in on the sheets of one of the beds.  What, what can you tell me about that,

yeah, that's why you're here.

A. I can't tell you, I don't know.

. . .

Q. Were you aware of any bleeding or any blood in the bed?

A. No.

Q. Could there have been some that you weren't aware of?

A. No, I don't think so.

Q. They've got the sheets and stuff.

A. Are they sure it's blood?

Q. Ah they're having it analyzed right now and there there is sure enough to hold you and be filing for a warrant.

A. ah I think they'd better check that out closer first.

Q. What could it be?

A. Ah I don't know, they had all kinds of stuff in there, chocolate candies but. . .

Q. Well they're they're pretty sure

Agent Walker lied. Agent Walker had no information that there was blood on the sheets; the sheets were not in police custody; and in addition there was no blood to be analyzed. Agent Walker pled with Mayes to tell the truth because he could empathize with Mayes' situation. Agent Walker told Mayes that his children were being examined at the hospital and insinuated that the children may not be healthy. Mayes requested to take a polygraph examination.

After no sleep for at least 26 hours; being arrested; having his children taken from him; and being interviewed; Mayes was

25

driven to Pierre, South Dakota to take a polygraph examination several hours later. Apparently, when asked whether he ever had sexual contact with his children, the polygraph machine indicated Mayes was not telling the truth. The polygraph examiner then used this information in an effort to obtain a confession. For twenty minutes, Mayes denied having any sexual contact with his children. However, eventually he stated that he inappropriately touched his daughter Crystal about a year earlier in Washington. When the examiner tried to question him further, Mayes invoked his Fifth Amendment Rights and asked for an attorney. Mayes maintained that the examiner was attempting to put words in his mouth.

Mayes argues that these circumstances require the suppression of his admission. He points out that a confession or admission must be suppressed if it is determined that the admission or confession was not voluntarily given. § 46-13-301(1), MCA. An analysis of the voluntariness of a confession is a factual question which must take into account the totality of the circumstances. State v. Allies (1979), 186 Mont. 99, 606 P.2d 1043. However, when a defendant raises the question of voluntariness, the State must prove by a preponderance of the evidence that the confession or admission was voluntarily obtained. § 46-13-301(2), MCA.

In State v. Phelps (1985), 215 Mont. 217, 696 P.2d 447, we stated:

> We cannot over emphasize our strong condemnation of police practices . . . wherein a police officer misinforms a defendant as to other arrestees having given confessions. . . .

26

Similarly, we cannot condone the tactics of this officer who informed Phelps as to the existence of incriminating evidence when the evidence was inconclusive.

The combination of the circumstances surrounding Mayes' confession mandates suppression. By the time Mayes confessed to the Washington crime he had been awake for more than 30 hours, questioned continually, separated from his children and lied to about the evidence against him. We conclude that a preponderance of the evidence does not support the District Court's conclusion that Mayes' confession was voluntary.

We hold that the District Court committed reversible error in denying Mayes' motion to suppress evidence of his admission of inappropriately touching his daughter approximately one year earlier while living in the State of Washington. We reverse and remand on this issue.

Affirmed in part. Reversed in part.

We Concur:

_____
Justice

_____
Chief Justice

_____
_____
_____
_____
Justices

Justice R. C. McDonough concurring in part and dissenting in part:

I concur in the majority opinion determinations on Issues 1, 2, 3 and 4.

I dissent from the majority on Issue 5. Mayes was competent, aware of and capable of exercising his rights, which he did a short time later.

_____
                Justice

Chief Justice J. A. Turnage concurring in part and dissenting in part:

I concur in the majority opinion affirming the conviction on Issues 1, 2 and 3.

I respectfully dissent from the majority of this Court's decision on Issue 4, and I would affirm the conviction as to that issue.

As stated in the majority opinion, witnesses Lisa Berens' and Joyce Panzer's testimony was in the form of tape recordings, and the jury, after they had retired, requested that they be permitted to hear the testimony a second time.

Notwithstanding that this Court in State v. Harris (1991), 247 Mont. 405, 808 P.2d 453, held that the District Court committed reversible error in that case when the jury was allowed to rehear the testimony of a child victim, I believe the Court should reconsider its decision in view of the provisions of § 46-16-503(2), MCA:

> After the jury has retired for deliberation, <u>if there is any disagreement among the jurors as to the testimony</u> or if the jurors desire to be informed on any point of law arising in the cause, they shall notify the officer appointed to keep them together, who shall then notify the court. <u>The information requested may be given, in the discretion of the court</u>, after consultation with the parties. [Emphasis supplied.]

Although the record does not disclose the precise "disagreement" that prompted the jurors to make their request to rehear the tape recordings, no other conclusion can be reached other than there must have been uncertainty and, therefore, a practical disagreement as to what the testimony stated. Otherwise, they would have had no reason to make the request. The plain language of the statute provides that "the information requested may be given, in the discretion of the court."

When the court follows the language of the statute, there certainly cannot be an abuse of discretion.

I further dissent from the Court's finding of reversible error in Issue 5. Without approving all of the statements that were made by the South Dakota law enforcement officer concerning physical

29

evidence that was not in the possession of the Montana authorities, I believe that, in view of the other overwhelming evidence against the defendant, such statements would be harmless error under the facts of this case.

With reference to the majority's concern about defendant's lack of sleep and his interrogation by the South Dakota authorities resulting in his admission of sexual contact with one of the victims occurring in the State of Washington, such circumstances, again in view of the overwhelming evidence against the defendant, would be harmless error. Mayes was aware of and capable of exercising his rights. Subsequent to his admission, he invoked his Fifth Amendment rights and asked for an attorney.

I believe that law enforcement officers should be extremely careful about information they provide a defendant and also about the circumstances surrounding extended interrogation of a suspect. The facts in this case, however, support the District Court's refusal to suppress this evidence.

For these reasons, I would affirm the conviction of the defendant.

Chief Justice

30