**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Douglas Lee HUTTON, Defendant–Appellee.**

**No. 91SA427.**

Supreme Court of Colorado, En Banc.

June 22, 1992.

Donald E. Mielke, Dist. Atty., Donna Skinner Reed, Chief Appellate Deputy Dist. Atty., Golden, for plaintiff-appellant.

M. Evan Sweet, Lakewood, for defendant-appellee.

Justice MULLARKEY delivered the Opinion of the Court.

The People, pursuant to C.A.R. 4.1, appeal the district court's ruling, in *People v. Hutton,* No. 91CR747, suppressing a statement given by the defendant to a polygraph examiner. Although the district court concluded that the defendant waived his *Miranda* [1] rights and voluntarily gave statements prior to the polygraph examination, the court concluded that the defendant's statement, made after the test in response to the examiner's expressed belief that the defendant had lied, was not voluntary. The court's reasoning was based upon a finding that, while there had been no coercion, the examiner's conduct "taint-

---

**1.** *See Miranda v. Arizona,* 384 U.S. 436, 16    L.Ed.2d 694 (1966).

ed" the defendant's responsive statement, rendering it involuntary. The People argue that because the court concluded that the examiner's conduct did not amount to coercion, the defendant's statement is admissible as having been voluntarily made under the totality of the circumstances. We reverse the district court's ruling.

## I.

The defendant, Douglas Hutton, is charged with two counts of sexual assault on a child in violation of section 18–3–405, 8B C.R.S. (1986 & 1991 Supp.).[2] On January 8, 1991, Hutton underwent a polygraph examination at the request of the Lakewood Police Department pursuant to the Department's investigation of the alleged sexual assault. The examination was conducted by a private polygraph examiner, who was employed by and acting on behalf of the police department. The examination was conducted at the examiner's office. The defendant was not in custody at the time, and no counsel was present with the defendant.

Before the examiner began the polygraph test, he conducted a pre-test interview. Prior to the commencement of that interview, the defendant was verbally advised of his *Miranda* rights and signed a waiver form which contained the rights in written form. The waiver form included a paragraph which stated:

> The above statement of my rights has been read and explained to me. I fully understand my rights. I am ready and willing to answer questions or to make a statement without further consulting a lawyer or having a lawyer present during questioning. In waiving my right to remain silent, I wish to state no threats or promises have been made and no persecution or coercion has been used against me.

The polygraph machine was attached to the defendant during the pre-test interview in order to acclimate him to the machine. The machine was not operating during that time, and the defendant was so informed. In addition, the examiner told the defendant that he was "free to leave" at any time.

During the pre-test interview, the examiner asked questions concerning Hutton's relationship with the victim. Hutton stated that he had met the victim in February 1990 when the victim was delivering newspapers. He stated that he had developed a friendship with the victim, and the victim had often visited the defendant at his home.

After the polygraph test, Hutton signed a form which stated:

> This polygraph examination having concluded, I can state at no time were there any threats, coercion or harm done to me during the entire time I have been here, either in connection with the examination or the signing of this form. That although I realize the results of the examination may be unfavorable to me, I hereby release, waive and forever discharge [the examiners and their corporation] from any and all action, claim, demands or liability resulting directly or indirectly from the taking of said examination.

The form originally provided that the examiner and his corporation would be released from liability in the event that "any error" was made. However, the defendant crossed out the words "any error" on the form, not wishing to release the examiner from liability in the event of an error.

Upon completion of the polygraph examination, the examiner left the room to review the results of the test. When he reentered the room in which the defendant was seated, he explained to the defendant that, "in [his] opinion there had been some deception."[3] The defendant then gave a statement to the effect that he had become

---

2. The People filed a complaint on February 5, 1991, charging that on or before December 9, 1990, Hutton committed sexual assault on the victim, who was under 15 years of age.

3. The examiner testified that he is required by the American Polygraph Association, of which he is a member, to allow the individual who has taken the test to offer an explanation where the test result indicates deception on the part of the test-taker.

sexually aroused on several occasions in the presence of the victim. He described one particular occasion in which the victim had changed clothes in the defendant's bedroom, stating that he had become aroused at the sight of the boy without clothes. The defendant did not at any point in the pre- or post-test interview or polygraph examination state that he wanted to cease answering questions. Nor was there any indication that the defendant was under duress.

## II.

When the voluntariness of a defendant's statement is challenged, the burden is on the prosecution to prove by a preponderance of the evidence that, under the totality of the circumstances, the statement was made voluntarily. *People v. District Court*, 785 P.2d 141, 144 (Colo.1990); *People v. Sparks*, 748 P.2d 795, 797 (Colo. 1988); *People v. Raffaelli*, 647 P.2d 230 (Colo.1982). "The trial court must determine whether the statement was the 'voluntary product of a free and deliberate choice rather than [the product of] intimidation, coercion, or deception.'" *District Court*, 785 P.2d at 144 (*quoting Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 1140, 89 L.Ed.2d 410 (1986)). "The term 'totality of circumstances' refers to the significant details surrounding and inhering in the interrogation under consideration." *People v. Gennings*, 808 P.2d 839, 844 (Colo.1991). In *Gennings*, this court articulated several factors which should be considered in determining voluntariness under the totality of the circumstances:

> Included in any listing of such details, but by no means intended as an exhaustive cataloging, are the following: whether the defendant was in custody or was free to leave and was aware of his situation; whether *Miranda* warnings were given prior to any interrogation and whether the defendant understood and waived his *Miranda* rights; whether the defendant had the opportunity to confer with counsel or anyone else prior to the interrogation; whether the challenged statement was made during the course of an interrogation or instead was volunteered; whether any overt or implied threat or promise was directed to the defendant; the method and style employed by the interrogator in questioning the defendant and the length and place of the interrogation; and the defendant's mental and physical condition immediately prior to and during the interrogation, as well as his educational background, employment status, and prior experience with law enforcement and the criminal justice system.

*Gennings*, 808 P.2d at 844. We give deference to the trial court's findings of fact concerning voluntariness. *People v. Jensen*, 747 P.2d 1247 (Colo.1987); *People v. Parks*, 195 Colo. 344, 579 P.2d 76 (1978).

The prosecution asserts that although the trial court used language in its ruling which referred to the totality of the circumstances, the court did not actually consider the totality of the circumstances because the only detail mentioned by the court was the examiner's statement to the defendant that he believed there had been some deception. The prosecution emphasizes that the trial court determined the pre-test statements to be voluntary and that the only change identified by the court between the pre- and post-test statements was the examiner's statement to the defendant concerning his deception. Consideration of this one detail, it argues, was insufficient for a finding that the defendant's statement was involuntary. Rather, because the trial court specifically found no coercion of the defendant, the trial court's suppression of the statements as involuntary was erroneous. We agree.

"Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986). Here, the trial court concluded that the examiner's post-test statement to the defendant, which constituted something less than coercion, "tainted" the defen-

dant's statement, rendering such statement involuntary:

> And the Court finds that the statements given at the polygraph examination prior to the giving of the polygraph examination were voluntary and not in violation of the defendant's constitutional rights. However, after the giving of the polygraph examination, [the examiner] advised the defendant that certain aspects of the polygraph examination indicated to the examiner that the defendant was not a truth-teller, and he asked further questions of the defendant under that cloud of—while it's not coercion, it's certainly a taint of—it's certainly a sufficient taint that persuades this Court that any statements given after the polygraph examination were not voluntar[y]. They were given after a waiver of constitutional rights, but the Court will find that the statements given after the polygraph were not voluntary.
>
> . . . . .
>
> All right. I'm ruling that [the post-polygraph statements] were given after an intelligent acknowledgement of a waiver of his constitutional rights, but that they were given under circumstances which compelled the defendant to answer questions after he had been accused of not being a truth-teller and after he was asked to answer further questions or make further statements; and, therefore, under that taint, under that cloud of being accused of being not truthful, any statements made under that cloud were made under compulsion and were not voluntary.
>
> . . . . .
>
> It is my view, under the totality of the circumstances in this case . . . that the statement after the polygraph examination is not voluntary.

The court did not identify any factor other than the examiner's post-test statement as reason for suppressing the defendant's statement. We believe that the trial court failed to evaluate the totality of the circumstances and, therefore, did not apply the correct standard for determining whether the defendant's post-examination statement was voluntary.

Next, we will review the trial court's findings to determine the voluntariness of the defendant's statement under the correct standard. We believe that the court's findings are sufficient and adequately supported by the record, so as to make remand for further findings unnecessary for such a determination. *See People v. McIntyre,* 789 P.2d 1108, 1110 (Colo.1990) (trial court must make sufficiently clear and detailed findings of fact and conclusions of law on the record to permit meaningful appellate review).

In this case, the court concluded that Hutton was not in custody and was adequately informed of his *Miranda* rights prior to the interview. The trial court concluded that Hutton understood and waived those rights when he signed the waiver form. The court also concluded that the defendant's statements were not made in response to any coercive methods on the part of the examiner. Importantly, the examiner's post-test statement to the defendant concerning the test results, which was the sole factor relied upon by the court in suppressing the statement, was determined by the court to be uncoercive.

The record supports these conclusions. The defendant was properly advised of his *Miranda* rights, both verbally and in writing, before he signed the waiver form. In addition, when signing the form releasing the examiner and his company from liability, the defendant independently crossed out certain words so as to dictate the extent of the release. Such conduct indicates that the defendant understood the consequences of his actions. No promises or threats were made by the examiner. The interview and test appear to have been short in length, and the defendant was not accompanied by a police officer to the examiner's office. The defendant did not appear to be under duress at any time during the course of the interviews or test. Nor did the defendant at any time request that questioning cease. Therefore, despite the absence of the defendant's counsel at the

examination, the *Gennings* factors weigh significantly in favor of a finding that the post-examination statement was voluntary.[4]

### III.

Because the defendant's statement was made in the absence of coercive circumstances after advisement and waiver of his *Miranda* rights, we conclude that the statement was voluntary under the totality of the circumstances. Accordingly, we reverse the district court's ruling suppressing the statement.

---

**4.** A case involving substantially similar trial court findings regarding a defendant's statement determined the statement to be voluntary under the totality of circumstances analysis. *See People v. Robinson,* 713 P.2d 1333, 1335 (Colo.App. 1985), *certiorari denied,* (defendant's post-polygraph statement made after having been confronted with the police officer's belief that the defendant was not telling the truth was made voluntarily under the totality of the circumstances where the defendant received adequate *Miranda* advisement before the interview, there

was no coercion and no promises were made to induce the defendant's statement).