NO.   93-158

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STATE OF MONTANA,

        Plaintiff and Appellant,

    v.

BOBBY K. CRAIG,

        Defendant and Respondent.

FILED

DEC 06 1993

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable John M. McCarvel, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            Hon. Joseph P. Mazurek, Attorney General,
            John Paulson, Assistant Attorney General,
            Helena, Montana; Patrick L. Paul, Cascade
            County Attorney, Great Falls, Montana

        For Respondent:

            John Keith, Attorney at Law,
            Great Falls, Montana


                    Submitted on Briefs:   September 16, 1993

                              Decided:   December 6, 1993

Filed:

_____
                Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

The State of Montana appeals from a decision of the Eighth Judicial District Court, Cascade County, granting defendant's motion to suppress his confession made following a post-polygraph interview.

We affirm.

The State raises the following issue:

Did the District Court err in granting defendant's motion to suppress a statement given by defendant following a polygraph examination?

Defendant is accused of sexually assaulting his 11-year-old step-granddaughter on July 12, 1992, while on a family fishing excursion in Great Falls. Defendant does not have an existing criminal record.

Defendant was first questioned concerning the allegations on August 7, 1992, by Detective Bellusci. At that time, the detective advised defendant of his rights pursuant to Miranda v. Arizona (1965), 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694. The detective again spoke with defendant on August 26, 1992, to schedule a time for a polygraph examination.

On August 28, 1992, defendant went to the Great Falls Police Station at the request of Detective Bellusci. However, defendant contends he did not know at that time that he would be subjected to a polygraph examination. Detective Bellusci explained to defendant that the results of the polygraph were not admissible as evidence. Prior to the interview and polygraph examination, Officer Theisen,

2

a certified polygraph examiner, gave defendant a <u>Miranda</u> warning and defendant signed a waiver and consent form. Officer Theisen conducted a background interview prior to the **polygraph** examination. The background interview revealed that defendant had six and a one-half hours of sleep before taking the polygraph, although at the time of the hearing, defendant contended that he had only one hour of sleep. The exam lasted for two hours and fifteen minutes.

At the conclusion of the polygraph examination, Officer Theisen told the defendant the polygraph indicated he had lied, and then began questioning him. Officer Theisen then called in Detective Bellusci, who also confronted defendant and told him that he was lying. The officers told defendant that the machine was proof that he lied. After approximately 15 to 20 minutes of questioning, defendant confessed to the offense.

On September 8, 1992, the Cascade County Attorney's Office filed an information charging defendant with one count of felony sexual assault in violation of § 45-2-502, MCA. At his arraignment on October 13, 1992, defendant pled not guilty. On January 15, 1993, defendant filed a motion to suppress his statement given after the polygraph examination. On February 3, 1993, the District Court held a hearing on the motion, ruling from the bench that the motion was granted. On February 4, 1993, the court entered a written order granting the motion. The State appeals from that order.

The State argues that the police used appropriate tactics in this case; that State v. Mayes (1992), 251 Mont. 358, 825 P.2d 1196, is not controlling in this instance; and that the District Court's suppression of the evidence is in error. Defendant does not contend that he was in custody at the time he admitted to touching the victim. Instead, defendant argues that the tactic used by the police when telling him that he was lying because of the results of the polygraph in order to induce a confession is improper.

To determine whether a confession is voluntary "is a factual question which must take into account the totality of the circumstances." Maves, 825 P.2d at 1208 (citing State v. Allies (1979), 186 Mont. 99, 606 P.2d 1043). "[W]hen a defendant raises the question of voluntariness, the State must prove by a preponderance of the evidence that the confession or admission obtained was voluntarily obtained." Maves, 825 P.2d at 1208 (citing § 46-13-301(2), MCA).

Maves involved a defendant found guilty of incest who confessed after a polygraph interrogation that he had inappropriately touched his daughter one year earlier while living in Washington. This Court suppressed the confession because at the time of the confession, the defendant had been awake for more than 30 hours, had been questioned continually, had been separated from his children, and had been lied to about the evidence against him. Maves, 825 P.2d at 1208. The polygraph examination indicated the

4

defendant was not telling the truth, and the examiner used that information to obtain a confession. Mayes, 825 P.2d at 1207.

Here, we do not have the same facts as were present in Mayes. Before Officer Theisen initiated the polygraph exam, defendant indicated that he had slept for six and one-half hours prior to the exam. The police officers did not fabricate evidence, or tell defendant that they had evidence that did not exist.

Even so, we strongly condemn the tactics used by the officers in this case to coerce defendant's confession. Prior to this charge, defendant had no criminal record and did not have experience with police interrogation. The officers mislead defendant into believing that the results of the test were legitimate and admissible in order to induce a confession. The State maintains that the officers' conduct in this case is an acceptable tactic:, and that the use of a polygraph test is an effective tool for investigative purposes.

Regardless of its acceptability among the police, it is not acceptable to this Court for the police to use the results of a polygraph examination to tell a defendant that he lied in order to extract a confession. Nor can we say that the polygraph was used for investigative purposes in this case. Officer Theisen testified that the purpose of telling defendant that he lied was to elicit a statement.

In State v. Staat (1991), 248 Mont. 291, 292, 811 P.2d 1261, 1262, we stated our position that we have "long abhorred the use of lie detector evidence." (quoting State v. McPherson (1989), 236

5

Mont. 484, 491, 771 **P.2d** 120, 124).  We restate for the bench and bar of Montana that:

> In light of the lack of trustworthiness of the results of polygraph tests, we conclude that application of the above statute [§ 37-62-302, MCA] should not be limited to those court proceedings in which the rules of evidence govern, but should extend to every proceeding in Montana courts of law. . . .
>
> ' ♦ ♦ '
>
> Polygraph evidence shall not be allowed in any proceeding in a court of law in Montana.  The <u>only</u> acceptable lie detection methods in Montana court proceedings reside with the court in bench trials, the jury in jury trials, and the skill of counsel in cross-examination in all trials.  [Emphasis added].

<u>Staat</u>, 811 **P.2d** at 1262.

We also condemn the use of the results of polygraph examinations to elicit or coerce a confession from defendants. We hold that the District Court did not err in suppressing the statement made by defendant following a polygraph examination where the police officers used the results of the polygraph to tell the defendant he had lied so as to elicit a statement or confession.

We affirm the decision of the District Court.

_____
Justice

We concur:

_____
Chief Justice

6



John Conway Harrison

_____

Jim Trieweiler

_____

Terry Tschudin

_____
**Justices**

I respectfully dissent.

Here, the defendant confessed to the crime of sexually assaulting a minor after being informed by a police officer that his polygraph examination indicated that he was lying about the alleged assault.

Without specifically so stating, this Court apparently concludes that the voluntariness of the defendant's confession is at issue because of impermissible police tactics. That being the case it is, then, incumbent that we at least apply to that issue the test which the law requires.

A confession is to be suppressed only if it is determined that it was not given voluntarily. Section 46-13-301(1), MCA. It is well settled in this State that "[a]n analysis of the voluntariness of a confession is a factual question which must take into account the totality of the circumstances," State v. Mayes (1992), 251 Mont. 358, 376, 825 P.2d 1196, 1208; State v. Allies (1979), 186 Mont. 99, 111, 606 P.2d 1043, 1050; with each case being analyzed on its facts and no single factbeing dispositive. State v. Lenon (1977), 174 Mont. 264, 271, 570 P.2d 901, 906. (Emphasis added.)

In the present case, applying the totality of the circumstances test, it is clear that the defendant voluntarily confessed.

While this Court focuses on the statement made by the polygraph examiner after the test, to the effect that the results of the polygraph test indicated untruthfulness on the part of the defendant, that was but one fact to be considered in conjunction

with all other facts in determining whether the defendant's confession was voluntarily given. People v. Button (Colo. 1992), 831 P.2d 486, 489. Even assuming that the examiner's comment was improper, a conclusion with which I do not agree, the balance of factors here indicate that the defendant's confession was voluntarily given.

The defendant is a 59 year old man with a ninth grade education employed as a custodian. There is no evidence that he had difficulty communicating in or understanding English. Be agreed to further discuss the case at the police station after having been questioned earlier by Officer Bellusci and having been given the Miranda warnings on that prior occasion. Be traveled to the police station by himself. The defendant slept for more than six hours before he arrived at the station for the polygraph examination. Be was advised by Officer Bellusci before the exam that the results of the exam were not admissible. The defendant was advised of his Miranda rights before the exam. Tim Theisen, the polygraph examiner, discussed the nature of the exam and the polygraph with the defendant and gave him a consent form to be signed before the exam commenced. The form stated that he was taking the test voluntarily and that he had not been coerced or forced to consent under duress or because of a promise of reward. The consent form also stated that he had been advised of his Miranda rights. The entire period of examination lasted about two hours and 15 minutes and was given at a time agreeable to the defendant.

9

Defendant's confession came 15 or 20 minutes into post-examination questioning and after he was informed that the polygraph exam indicated he had lied.

At no time did the police make any false statements to the defendant in order to induce a confession. The police never made any promises of benefits or rewards to him if he would confess to the crime. They were not unduly confrontational. There is no evidence that the defendant was not free to leave if he wished: he was not under arrest, and, thus, this was not a custodial interrogation. There are no specific allegations of coercive conduct. There are no allegations that he was deprived of sleep, water, food, contact with the outside world or that he was detained too long. See State v. Blakney (1982), 197 Mont. 131, 141, 641 P.2d 1045, 1051. In short, as the Court acknowledges in its opinion, there were none of the impermissible police tactics which we condemned in Maves present here.

Simply put, when the confession is reviewed under the totality of the circumstances, one is led inescapably to the conclusion that the confession was voluntarily given. See State v. Waugh (Kan. 1986), 712 P.2d 1243: Hutton, 831 P.2d at 489; People v. Knighton (1983), 458 N.Y.S.2d 320; People v. Ray (Mich. 1988), 430 N.W.2d 626.

This Court, nevertheless, and without analyzing the confession under the appropriate totality of circumstances test, condemns the tactics used by the officers in obtaining the defendant's confession. The opinion states that "[t]he officers mislead

10

defendant into believing that the results of the test were legitimate and admissible in order to induce a confession." That conclusion, of course, flies in the face of the fact that Officer Bellusci advised the defendant prior to the exam that the results were _not_ admissible -- a point acknowledged by the Court.

Furthermore, unless this case now stands for the opposite rule, there is no requirement that the police administer new _Miranda_ warnings after the exam and before post-examination questioning. Wyrick v. Fields (1982), 459 U.S. 42, 47, 103 S.Ct. 394, 74 L.Ed.2d 214.

In summary, there is simply no factual basis in the record for the conclusion, nor is there any discussion in the Court's opinion of how, exactly, the police here "mislead" the defendant or unlawfully coerced his confession. They did nothing of the sort, and a proper totality of circumstances analysis would clearly reveal that.

The Court goes on to state that ". ...it is not acceptable to this Court for the police to use the results of a polygraph examination to tell the defendant that he lied in order to extract a confession." That begs the question of, for what, then, can the police use the results of a polygraph examination? If the police are not free to tell a defendant that they believe he is lying, then there is really no point in giving him the examination in the first place.

The polygraph, while its use has been severely restricted, is still considered an effective tool for investigative purposes, even

11

if the test results themselves may lack trustworthiness.

> The fact that a test has not been deemed sufficiently reliable to authorize admission of the results in evidence does not support a logical inference that the defendant's statements made during or following the test are not reliable. The premise cannot support the defendant's conclusion because the statements made by an examinee during a polygraph examination <u>can be</u> disassociated from the underlying test.

<u>Ray</u>, 430 N.W.2d at 628. Moreover:

> [t]he general rule in other jurisdictions is that statements are not inadmissible merely because they were made during the course of a polygraph examination. In general, a defendant will be unsuccessful in challenging the admissibility of an alleged polygraph-induced confession unless specific coercive conduct or a denial of constitutional rights can be shown, as opposed to a mere allegationthatthe polygraph examination improperly influenced the defendant's confession of the crime.

<u>Ray</u>, 430 N.W.2d at 628. (Citation omitted.)

At least up until now, we have held to the rule that voluntary statements made by a defendant following a polygraph examination may be admitted into evidence even though the results of the exam itself would be inadmissible. State v. Smith (1986), 220 Mont. 364, 380, 715 P.2d 1301, 1310. While the Court reiterates its "abhor[rence] [for] the use of lie detector evidence," citing State v. Staat (1991), 248 Mont. 291, 292, 811 P.2d 1261, 1261, the fact is that no "lie detector evidence" was used here. We are dealing, instead, with a confession given <u>after</u> a polygraph exam where the totality of circumstances clearly supports the conclusion that the incriminating statement was voluntary and not the result of police misconduct.

If we are now advancing our abhorrence for "lie detector evidence" to the point where incriminating, voluntary statements

given after such an exam are <u>per se</u> inadmissible, as they now apparently are, then we should simply so hold and save law enforcement authorities in this State the future frustration and wasted effort of attempting to use, within recognized parameters, the exam as a legitimate investigative tool to obtain truthful statements from defendants.

In failing to properly examine the defendant's incriminating statement in the context of the totality of the circumstances in which it was given, the District Court, and now this Court, have ignored and have implicitly overruled existing precedent; have fashioned an unjustified restriction on legitimate police interrogation; and have put the final nail in the coffin of the use of the polygraph examination as an investigative tool in Montana.

In that I cannot agree. I would reverse, and, accordingly, I respectfully dissent from this Court's opinion.

_____
Justice

Justice Karla M. Gray joins in the foregoing dissent.

_____
Justice

13