JUSTICE NELSON
dissents:
Here, the defendant confessed to the crime of sexually assaulting a minor after being informed by a police officer that his polygraph examination indicated that he was lying about the alleged assault.
Without specifically so stating, this Court apparently concludes that the voluntariness of the defendant’s confession is at issue because of impermissible police tactics. That being the case it is, then, *244 incumbent that we at least apply to that issue the test which the law requires.
A confession is to be suppressed only if it is determined that it was not given voluntarily. Section 46-13-301(1), MCA. It is well settled in this State that “[a]n analysis of the voluntariness of a confession is a factual question which must take into account the totality of the circumstances,” State v. Mayes (1992), 251 Mont. 358, 376, 825 P.2d 1196, 1208; State v. Allies (1979), 186 Mont. 99, 111, 606 P.2d 1043, 1050; with each case being analyzed on its facts and no single fact being dispositive. State v. Lenon (1977), 174 Mont. 264, 271, 570 P.2d 901, 906. (Emphasis added.)
In the present case, applying the totality of the circumstances test, it is clear that the defendant voluntarily confessed.
While this Court focuses on the statement made by the polygraph examiner after the test, to the effect that the results of the polygraph test indicated untruthfulness on the part of the defendant, that was but one fact to be considered in conjunction with all other facts in determining whether the defendant’s confession was voluntarily given. People v. Hutton (Colo. 1992), 831 P.2d 486, 489. Even assuming that the examiner’s comment was improper, a conclusion with which I do not agree, the balance of factors here indicate that the defendant’s confession was voluntarily given.
The defendant is a 59 year old man with a ninth grade education employed as a custodian. There is no evidence that he had difficulty communicating in or understanding English. He agreed to further discuss the case at the police station after having been questioned earlier by Officer Bellusci and having been given the Miranda warnings on that prior occasion. He traveled to the police station by himself. The defendant slept for more than six hours before he arrived at the station for the polygraph examination. He was advised by Officer Bellusci before the exam that the results of the exam were not admissible. The defendant was advised of his Miranda rights before the exam. Tim Theisen, the polygraph examiner, discussed the nature of the exam and the polygraph with the defendant and gave him a consent form to be signed before the exam commenced. The form stated that he was taking the test voluntarily and that he had not been coerced or forced to consent under duress or because of a promise of reward. The consent form also stated that he had been advised of his Miranda rights. The entire period of examination lasted about two hours and 15 minutes and was given at a time agreeable to the defendant.
*245 Defendant’s confession came 15 or 20 minutes into post-examination questioning and after he was informed that the polygraph exam indicated he had lied.
At no time did the police make any false statements to the defendant in order to induce a confession. The police never made any promises of benefits or rewards to him if he would confess to the crime. They were not unduly confrontational. There is no evidence that the defendant was not free to leave if he wished; he was not under arrest, and, thus, this was not a custodial interrogation. There are no specific allegations of coercive conduct. There are no allegations that he was deprived of sleep, water, food, contact with the outside world or that he was detained too long. See State v. Blakney (1982), 197 Mont. 131, 141, 641 P.2d 1045, 1051. In short, as the Court acknowledges in its opinion, there were none of the impermissible police tactics which we condemned in Mayes present here.
Simply put, when the confession is reviewed under the totality of the circumstances, one is led inescapably to the conclusion that the confession was voluntarily given. See State v. Waugh (Kan. 1986), 712 P.2d 1243; Hutton, 831 P.2d at 489; People v. Knighton (1983), 458 N.Y.S.2d 320; People v. Ray (Mich. 1988), 430 N.W.2d 626.
This Court, nevertheless, and without analyzing the confession under the appropriate totality of circumstances test, condemns the tactics used by the officers in obtaining the defendant’s confession. The opinion states that “[t]he officers mislead defendant into believing that the results of the test were legitimate and admissible in order to induce a confession.” That conclusion, of course, flies in the face of the fact that Officer Bellusci advised the defendant prior to the exam that the results were not admissible — a point acknowledged by the Court.
Furthermore, unless this case now stands for the opposite rule, there is no requirement that the police administer new Miranda warnings after the exam and before post-examination questioning. Wyrick v. Fields (1982), 459 U.S. 42, 47, 103 S.Ct. 394, 396, 74 L.Ed.2d 214.
In summary, there is simply no factual basis in the record for the conclusion, nor is there any discussion in the Court’s opinion of how, exactly, the police here “mislead” the defendant or unlawfully coerced his confession. They did nothing of the sort, and a proper totality of circumstances analysis would clearly reveal that.
The Court goes on to state that “...it is not acceptable to this Court for the police to use the results of a polygraph examination to tell the defendant that he lied in order to extract a confession.” That begs the *246 question of, for what, then, can the police use the results of a polygraph examination? If the police are not free to tell a defendant that they believe he is lying, then there is really no point in giving him the examination in the first place.
The polygraph, while its use has been severely restricted, is still considered an effective tool for investigative purposes, even if the test results themselves may lack trustworthiness.
The fact that a test has not been deemed sufficiently reliable to authorize admission of the results in evidence does not support a logical inference that the defendant’s statements made during or following the test are not reliable. The premise cannot support the defendant’s conclusion because the statements made by an examinee during a polygraph examination can be disassociated from the underlying test.
Ray, 430 N.W.2d at 628. Moreover:
[t]he general rule in other jurisdictions is that statements are not inadmissible merely because they were made during the course of a polygraph examination. In general, a defendant will be unsuccessful in challenging the admissibility of an alleged polygraph-induced confession unless specific coercive conduct or a denial of constitutional rights can be shown, as opposed to a mere allegation that the polygraph examination improperly influenced the defendant’s confession of the crime.
Ray, 430 N.W.2d at 628. (Citation omitted.)
At least up until now, we have held to the rule that voluntary statements made by a defendant following a polygraph examination may be admitted into evidence even though the results of the exam itself would be inadmissible. State v. Smith (1986), 220 Mont. 364, 380, 715 P.2d 1301, 1310. While the Court reiterates its “abhor[rence] [for] the use of lie detector evidence,” citing State v. Staat (1991), 248 Mont. 291, 292, 811 P.2d 1261, 1261, the fact is that no “lie detector evidence” was used here. We are dealing, instead, with a confession given after a polygraph exam where the totality of circumstances clearly supports the conclusion that the incriminating statement was voluntary and not the result of police misconduct.
If we are now advancing our abhorrence for “lie detector evidence” to the point where incriminating, voluntary statements given after such an exam are per se inadmissible, as they now apparently are, then we should simply so hold and save law enforcement authorities in this State the future frustration and wasted effort of attempting *247 to use, within recognized parameters, the exam as a legitimate investigative tool to obtain truthful statements from defendants.
In failing to properly examine the defendant’s incriminating statement in the context of the totality of the circumstances in which it was given, the District Court, and now this Court, have ignored and have implicitly overruled existing precedent; have fashioned an unjustified restriction on legitimate police interrogation; and have put the final nail in the coffin of the use of the polygraph examination as an investigative tool in Montana.
In that I cannot agree. I would reverse, and, accordingly, I respectfully dissent from this Court’s opinion.
JUSTICE GRAY joins in the foregoing dissent.